HIGHTOWER, Judge.
In this worker’s compensation suit, an employer and its insurance carrier appeal a hearing officer’s award of continuing disability benefits, all medical expenses, and attorney’s fees. Although it is undisputed that claimant sustained a job-related injury in early 1990, the primary issue concerns whether any disability extended past August 3, 1990. For the reasons hereinafter expressed, we reverse.
PACTS
Frank Bailey, on February 7, 1990, while driving a gas truck for Smelser Oil & Gas, suffered injuries when his vehicle jackknifed as he attempted to avoid a collision. Shortly thereafter, the employer and its insurer began paying him weekly disability benefits appropriately based on his previous salary; and, claiming continued debilitating pain, he eventually sought medical advice from an assortment of physicians.
On the day following the accident, claimant presented himself to Dr. Clyde Elliott for treatment after experiencing headaches, and also neck and back pain. Noting severe spasms in the neck and suspecting whiplash, the West Monroe physician admitted Mr. Bailey to the Glenwood Regional Medical Center. Dr. Myron Bailey, who had been requested for orthopedic consultation, saw claimant on Februaiy 10. During that examination, the patient explained that he had originally experienced headaches and, then progressively, cervical pain. Thereafter, Mr. Bailey suffered pain in his lower back and hips, as well as paresthesia in both hands.
Dr. Bailey immediately ordered cervical and lumbar MRI’s, but the patient did not submit to these diagnostic procedures until his pain began to subside. On February 16, after conservative treatment and essentially negative MRI results, Dr. Bailey authorized discharge from the hospital. At *1061 that time, the orthopedist expected improvement over the next several weeks and a return to work within approximately three months. Subsequently, he administered care from his office.
Through March and April, claimant complained of hurting and stiffness in his neck, and of headaches. Although exhibiting excellent muscle strength and benefiting from physical therapy, he continued to experience a limited range of motion. Then, on May 11, Mr. Bailey advised that not only had severe back pain started extending into his hips, but also that the recommended therapy now caused headaches. At this time, despite deducing that the patient had been exaggerating his symptoms, Dr. Bailey maintained the restriction from work. Also, in an effort to corroborate claimant’s reports of pain, the physician ordered further testing and psychological consultation. Mr. Bailey, however, failed to keep appointments with a clinical psychologist. At a final visit with the orthopedic surgeon on May 31, 1990, when the patient presented multiple subjective complaints with minimal objective findings, Dr. Bailey deemed the origin of the discomfort to be supraten-torial (apparently a euphemistic characterization denoting the genesis of the pain to be in the thought processes).
In both a July 26, 1990 letter to the insurer and a later verified report, Dr. Bailey concluded that claimant could return to work as of the date of his last office visit. Upon receipt of the July document, defendants terminated temporary total disability benefits effective August 3, 1990. Thereafter, the insurer maintains, claimant did not present any additional claims for com-pensable medical expenses.
Earlier, Dr. Bailey sought to refer his patient to a neurologist. Upon experiencing difficulty locating such a specialist, in Monroe or Shreveport, who would accept worker’s compensation patients, he sent claimant to Dr. Thomas Ingram of Jackson, Mississippi. On a May 29, 1990 visit there, Mr. Bailey chiefly complained of headaches, but also mentioned neck and lower back pain. Based on examination and history, the Jackson physician diagnosed only post-traumatic headaches and recommended tricyclic antidepressants. However, as the worker’s compensation insurer refused to pay for out-of-state medical services, this constituted Mr. Bailey’s sole contact with Dr. Ingram.
Dissatisfied with the other doctors, claimant then chose yet another Jackson physician, Dr. Daniel P. Dare. During an August 3 office visit, he related his injury to this orthopedist and complained of unremitting pain in various parts of the body. Examination revealed approximately 70% of normal range of motion in the cervical spine, and also tenderness and tingling in the upper extremities and back, especially near the L4-5 spinous process. X-rays proved unremarkable except for some degenerative changes in the last two lumbar segments. Dr. Dare, in view of the insurer’s declination to pay out-of-state medical expenses, did not subsequently treat the patient. In a verified report later submitted into evidence, he could not comment on degree or duration of any impairment.
After claimant filed a Disputed Claim For Compensation form with the Office of Worker’s Compensation Administration in October 1990, defendants agreed to pay for neurological treatment within the state. Thereafter, in January 1991, the patient reported to Dr. Juanita McBeath, a Shreveport specialist in head and neck pain. This physician interviewed, but neither examined nor treated, Mr. Bailey. Relying upon the patient’s oral history of complaints and treatment, the doctor decided claimant suffered from postconcussion syndrome with post-traumatic headaches. She believed that during a brief hospitalization she could relieve the headaches, and, subsequently, ascertain those steps, if any, necessary for alleviating the remaining pain. However, for reasons left unspecified in the record, Mr. Bailey did not thereafter undergo such treatment.
The hearing officer, following a September 5, 1991 trial, and based on a determination of continuing disability, ordered reinstatement of benefits retroactive to August 3, 1990. Additionally, finding neurological services to be unavailable within the state, *1062 the administrative official directed the employer and insurer to pay all medical expenses, regardless of where incurred. Concluding defendants acted arbitrarily and capriciously in handling the claim, the arbiter further awarded attorney’s fees. His reasons for judgment stated:
In summary, once respondents refused to pay for Dr. Ingram’s services; refused to accept the fact that Dr. Myron Bailey was a company doctor and not the choice of claimant; that respondents are therefore liable for all acts flowing from their refusals. Once again, the “rock and ripple” theory of tort law applies. They are therefore liable for all acts resulting therefrom.
Defendants now appeal.
DISCUSSION
Appellants initially level complaints at several evidentiary rulings.
Although guided by the practice and procedure of the state district courts where the worker’s compensation act or administrative regulations do not contain specific provisions, hearing officers are not strictly bound to technical rules of evidence or procedure as long as all findings stand upon “competent evidence.” LSA-R.S. 23:1317(A); Hearing Officer Rules of the Office of Workers’ Compensation Office (Rule 2). Thus, notwithstanding that the assignments of error before us may well be meritorious, we do not specifically address the issues presented. We conclude instead that, even assuming the evidence in question to be admissible, appellee still failed to demonstrate his entitlement to temporary total disability benefits.

Disability

Where a worker’s compensation claimant seeks temporary total disability benefits, he bears the burden of proving by clear and convincing evidence that his injury prevents him from engaging in any employment. LSA-R.S. 23:1221(l)(c). That burden of proof is enunciated by 1989 legislative amendments and made effective January 1, 1990. Recently, in Tanner v. International Maintenance Corp., 602 So.2d 1133 (La.App. 1st Cir.1992), the First Circuit explained:
These amendments set forth a more stringent standard of proof for a claimant seeking disability benefits based on a temporary total disability. Prior to the 1989 amendments, the burden of proof in a claim for temporary total disability benefits was by a “preponderance of the evidence”. However, under the statute, as amended, the claimant must prove the nature and extent of his disability by clear and convincing proof, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment.
The statute contemplates that an employee, as here, may be able to prove by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. The 1989 amendments to LSA-R.S. 23:1221(1) did not alter this burden of proof. However, in the absence of clear and convincing evidence that the employee is physically unable to engage in any employment, the claimant’s demand for temporary total compensation benefits, must fail.
To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Hines v. Williams, 567 So.2d 1139 (La.App. 2d Cir.1990), writ denied, 571 So.2d 653 (La.1990).
Of course, a hearing officer’s finding of fact may not be set aside on appeal in the absence of manifest error or clear wrongness, and where there is a conflict in the testimony, reasonable inferences of fact should not be disturbed on review. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Britton v. Morton Thiokol, Inc., 604 So.2d 130 (La.App. 2d Cir.1992).
In the instant case, the employer and its insurer did not contest the occurrence of any injury. Instead, they paid temporary total disability benefits and in-state medical expenses from the date of the accident until August 3, 1990. Nevertheless, they challenge Mr. Bailey’s assertions of continuing disability. It is their position that, *1063 after the termination of benefits, claimant did not suffer any injury residual. Upon review of the record, we agree.
The claimant’s condition at the time of trial is the proper criterion for determining nature and extent of disability. Hill v. L.J. Earnest, Inc., 568 So.2d 146 (La.App. 2d Cir.1990), writ denied, 571 So.2d 652 (La.1990); Foster v. Manville Forest Products, Inc., 554 So.2d 736 (La. App. 2d Cir.1989), writ denied, 558 So.2d 605 (La.1990). Here, on the date of trial, September 5, 1991, only Mr. Bailey himself provided a current assessment of his ability to work. The most recent doctor’s visit occurred some eight months previously. Dr. McBeath, who merely interviewed plaintiff and his spouse in January 1991, failed to evaluate the level or duration of any disability. Furthermore, although announcing her capacity to relieve the patient’s headaches, she never stated whether his symptoms precluded his ability to return to work.
Notably, all other submitted medical evaluations and reports stem from examinations conducted prior to the termination of disability benefits in August 1990. Dr. Dare, the orthopedist upon whom appellee relies, only saw the patient once. While believing further evaluation would be required, he did not address Mr. Bailey’s ability to function as a truck driver. Moreover, in a verified medical report based on the single visit, he specifically declined to determine disability, even as of August 3.
Dr. Bailey is the only physician confronting the question of ability to work. In progress notes, the July 26 letter to the insurer, and the verified report, he sets forth his opinion that claimant could return to work as of May 31, 1990. Despite having recommended both neurological and psychological consults, Dr. Bailey eventually concluded that the minimal objective findings did not adequately substantiate the multiple subjective complaints. The observations and opinions of the treating physician, although not irrebuttable, are to be accorded greater weight than those of a physician who has not served in that capacity.[1] Britton, supra; Freeman v. Rew, 557 So.2d 748 (La.App. 2d Cir.1990), writ denied, 563 So.2d 1154 (La.1990).
In summary, appellee failed to prove by clear and convincing evidence his disability or physical inability to work after August 3, 1990. Hence, determining the hearing officer manifestly wrong in that respect, we reverse the award of weekly benefits.

Medical Expenses

LSA-R.S. 23:1203(A) sets forth the duty an employer owes its employee, regarding medical expenses in a worker’s compensation case:
[T]he employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.... All such care, services, and treatment shall be performed at facilities within the state when available. [Emphasis added.]
Mr. Bailey obtained services from two different out-of-state physicians. In each instance, appellants refused requests for payment. As expressly indicated in the above-quoted statute, medical treatment must be performed within the state when available. Mr. Bailey visited Dr. Ingram, the Mississippi neurologist, after Dr. Bailey decided he could not locate, in North Louisiana, such a specialist willing to accept worker’s compensation patients. However, Dr. Bailey’s limited effort, as disclosed by his July 26 letter, simply does not reflect a reasonable search. Apparently, the inquiry extended only into Monroe and Shreveport. Indeed, appellee subsequently found a Shreveport neurologist, Dr. McBeath, willing to see him. Nor, by any means, can Mr. Bailey convincingly argue that orthopedic services, such as provided by Dr. Dare, could not be found within this state. Dr. *1064 Bailey, a Monroe orthopedist, had already provided treatment for four months. Clearly, the hearing officer erred in assessing these medical expenses to appellants. Cf. Soileau v. Louisiana Paving Co., Inc., 498 So.2d 1166 (La.App. 3d Cir.1986); Menard v. Royal Ins. Co., 498 So.2d 1164 (La.App. 3d Cir.1986).
In holding the employer and insurer liable for all in-state and out-of-state medical expenses, the hearing officer implicitly agreed with Dr. McBeath’s recommendations that the MRI’s be repeated. Yet that physician indicated in her deposition that, until accorded an opportunity to review the previous films, she could not deem repetition of these tests truly necessary. Nor did Dr. Dare examine the prior MRI’s before suggesting they be repeated. Furthermore, in that appellee failed to prove continuing disability, medical bills incurred after August 3, 1990 are not reimbursable. See Price v. Fireman’s Fund Ins. Co., 502 So.2d 1078 (La.1987); Britton, supra. Cf. Latiolais v. Jernigan Brothers, Inc., 520 So.2d 1126 (La.App. 3d Cir.1987); Wright v. Insurance Co. of North America, 491 So.2d 161 (La.App. 3d Cir.1986).

Attorney’s Fees

Appellant finally contends that the hearing- officer erred in awarding attorney's fees. In view of our determinations above, we agree.
CONCLUSION
Accordingly, for the foregoing reasons, we reverse the hearing officer’s awards of continuing disability benefits, medical expenses, and attorney’s fees. Costs of these proceedings are assessed to appellee.
REVERSED.

. We reject appellee’s argument that, as he did not choose this "company doctor,” medical evidence provided by Dr. Bailey should not be accorded the weight of a treating physician. Not only is there no evidence of Dr. Bailey’s "company" status, but also he is the only doctor who saw claimant more than once.