651 So.2d 980 (1995)
John Glenn PITRE, Plaintiff-Appellant,
v.
OILFIELD PRODUCTION CONTRACTORS, et al., Defendant-Appellee.
No. 94-961.
Court of Appeal of Louisiana, Third Circuit.
March 8, 1995.
*981 Bret Christopher Beyer, Lafayette, for John Glenn Pitre.
Nicholas Gachassin Jr., Lafayette, for Oilfield Production.
Before DOUCET, C.J., and KNOLL and SAUNDERS, JJ.
KNOLL, Judge.
This is a worker's compensation case. John Glenn Pitre (Pitre), the worker, appeals the denial of his worker's compensation claim against his employer, Oilfield Production Contractors (Oilfield), and its insurer, United States Fidelity & Guaranty Company (USF & G). The hearing officer determined that: (1) any physical disability Pitre had was a continuation of his pre-accident complaints related to prior back surgery; and (2) Pitre's psychological and substance abuse problems pre-dated his alleged work accident at Oilfield and suggested that the accident "was [nothing] ... more than one small and noncontributing event over a course of years of problems."
Pitre contends that the hearing officer erred: (1) in holding that he was not entitled to any presumption of causation due to the existence of his pre-existing problems; and (2) in concluding that the physical and psychiatric *982 problems he suffered were continuations of his pre-accident complaints. We affirm.

FACTS
The hearing officer provided written reasons that set forth the facts relevant to this case:
Mr. Pitre sustained a work accident in late 1988 while in the employ of a company other than the defendant [Oilfield]. A lumbar fusion was performed by Dr. John Cobb in 1989. Dr. Cobb testified ... that he released Mr. Pitre to medium work on December 3, 1990. At a follow up visit in February of 1991, Mr. Pitre complained of pain over his left hip down into his leg. Dr. Cobb noted in his report of February 25, 1991, that anatomically it appeared to be over the sacroiliac joint area and felt the basis of the complaints might be the sacroiliac joint.
In March of 1991 Mr. Pitre went to work with the defendant employer [Oilfield] as a dispatcher. He performed his duties, without incident, until July 3, 1991. On that date he sustained an accident when he fell over an empty nitrogen bottle while lifting another bottle. He was seen later that afternoon at the Emergency Room of Lafayette General Medical Center and was diagnosed with contusions and a muscle strain. He continued to work for the defendant until August 2, 1991, at which time he was released from employment, apparently due to staff cutbacks.
On July 22, 1991, prior to his termination, Mr. Pitre saw Dr. Cobb. Though Mr. Pitre testified that he told Dr. Cobb of the July 3 accident, the Court believes Mr. Pitre was mistaken as Dr. Cobb testified that no new accident was mentioned at that time and this is supported by his office notes. Dr. Cobb essentially testified that Mr. Pitre had a flare-up about 3 weeks previously (which would have been about the time of the accident) and that the complaints were similar to those of February 21. There was no spasm and Dr. Cobb did not notice any tenderness in the back.
On September 11, little over a month after his termination, he [Mr. Pitre] again saw Dr. Cobb and related the occurrence of the work accident. Dr. Cobb's office notes reflect that the complaints were `very similar to what he has had before when we did surgery on him.' Dr. Cobb's impression at that time was either a post-traumatic lumbar pain syndrome, sacroiliac joint injury or possibly an aggravation of his underlying problem with the left sided nerve.
Mr. Pitre remained unemployed until May of 1992 at which time he began working for Stratagraph, Inc., a logging operation. He was employed as a sample catcher, essentially a light duty position. He remained with Stratagraph until September of 1992 at which time he voluntarily took a leave of absence. It appears undisputed that he left Stratagraph because the company was undertaking a job with Exxon and Exxon had very strict requirements concerning the use of any type of drugs. Because Mr. Pitre was taking prescription drugs, he apparently felt he could not comply with the Exxon drug policy. Mr. Pitre has not been employed since.

CAUSATION
Mr. Pitre contends that the hearing officer erred in her determination that he was not entitled to a presumption of causation due to the existence of his pre-existing medical problems. He argues that although he had a prior lower back injury, the pain he suffered after the July 3, 1991, accident was in the left sacroiliac joint (SI joint), an area that he contends did not pain him prior to the accident. In support of his position, Pitre relies on assertions that the hearing officer ignored the medical testimony of Dr. Cobb and Dr. Olga Arter Reavill.
An employee in a worker's compensation action has the burden of establishing a causal link between the accident and the subsequent disabling condition. Walton v. Normandy Village Homes Ass'n, 475 So.2d 320 (La.1985). If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Bernard v. O'Leary Bros. Signs, Inc., 606 So.2d 1331 (La.App. 3rd Cir.1992). Likewise, *983 the plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Where, as in the case sub judice, the employee suffered from a pre-existing medical condition, he may nonetheless prevail if he proves that the accident "aggravated, accelerated, or combined with the disease or infirmity to produce ... disability for which compensation is claimed." Walton, supra, at 324 (citations omitted). In Walton, supra, the Louisiana Supreme Court recognized the existence of a presumption to aid plaintiffs in cases involving a pre-existing condition. It stated:
[W]hen an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability.
Id. at 324-25 (citing Hammond v. Fidelity & Cas. Co., 419 So.2d 829 (La.1982); Haughton v. Fireman's Fund American Ins. Co., 355 So.2d 927 (La.1978).
Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce his disability. Peveto v. WHC Contractors, 93-1402 (La. 1/14/94); 630 So.2d 689. Furthermore, medical testimony, albeit significant, is not conclusive as to the issue of causation, which is generally the ultimate fact to be decided by the hearing officer after weighing all the evidence. Id.
It is undisputed that Pitre had seriously injured his back prior to July 3, 1991. Dr. Cobb, an orthopedist, began treating Pitre for a back injury he sustained in a work-related accident in December 1988. On August 22, 1989, Dr. Cobb performed a left-sided S1 nerve decompression and discectomy at the L5-S1 level with a L5-S1 posterolateral fusion. As a result of this injury, Dr. Cobb gave Pitre a 25% permanent total disability rating.
It is also not disputed that Dr. Cobb found Pitre disabled between September 11, 1991, and April 29, 1992. However, although Dr. Cobb found muscle spasms in Pitre's lower back in September 1991, a finding not made in the two medical visits prior to the July 3, 1991, accident, the strongest opinion he was able to make was that "I thought he possibly could have had a new situation with the SI joint maybe being a problem, and/or just an aggravation of the nerve on the left side that he has always had." (Emphasis added). In offering that opinion, Dr. Cobb's office notes of February 25, 1991, indicate a history of pain over Pitre's left hip with the anatomical basis being the SI joint.
Pitre next suggests that Dr. Reavill, a pain management specialist, conclusively shows that the injury he received in the July 3, 1991, accident was completely different from complaints related to his prior back surgery. Dr. Reavill treated Pitre for a three week period beginning almost two years after the July 3, 1991, accident. She specifically stated that she would defer any questions relative to causation to Pitre's orthopedist. Nonetheless, she stated that if Pitre had no complaints of SI joint pain or hip pain prior to the July 3, 1991, accident, she would assume that the July 3 accident was the cause of the SI joint pain. As shown in Dr. Cobb's records, Pitre did have complaints of hip and SI joint pain prior to July 3, 1991.
Moreover, as well documented by Oilfield and USF & G, Pitre worked for 20 consecutive days after the July 3, 1991, accident, until he was terminated. In that interval, Pitre saw Dr. Cobb and failed to mention the July 3, 1991, accident. Furthermore, it was not until Pitre was terminated from Oilfield that he related the July 3, 1991, accident to his complaints.
After carefully reviewing the record in light of Pitre's assertions, we cannot say that the hearing officer was clearly wrong in her *984 factual determination that the July 3, 1991, accident was not the cause of Pitre's disability. The record fully supports the hearing officer's conclusion that Pitre's complaints of pain were a continuation of his prior back injury and not the result of any aggravation which might be traced to the July 3, 1991, accident.

MENTAL DISABILITY
Pitre further alleged in his hearing that the July 3 accident made him mentally incapable of returning to work. He argues that the hearing officer ignored the uncontradicted testimony of Dr. Sidney Dupuy, a psychiatrist, that the July 3, 1991, accident caused his depression to worsen to the point that it became disabling.
LSA-R.S. 23:1021(7)(c) provides:
A mental injury or illness caused by a physical injury to the employee's body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.
To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Bailey v. Smelser Oil & Gas, Inc., 609 So.2d 1059 (La.App. 2nd Cir.1992), rev'd on other grounds, 620 So.2d 277 (La.1993). A hearing officer's finding of fact may not be set aside on appeal in the absence of manifest error or clear wrongness, and where there is a conflict in the testimony, reasonable inferences of fact should not be disturbed on review. Britton v. Morton Thiokol, Inc., 604 So.2d 130 (La.App. 2nd Cir. 1992).
In the case sub judice, the record shows that Pitre suffered psychological and emotional problems both before and after the July 3, 1991, accident. As early as 1978, Dr. Jimmy Cole diagnosed a mild psychological neurotic condition with depression, hysteria, and some phobias. In the later part of 1983, Pitre attempted suicide by attempting to set himself on fire because of his inability to face his drinking problem.
Pitre admitted that he had been hospitalized five times since 1981 for alcohol abuse: June 1988Vermilion Hospital for alcohol dependency; February 1989treatment of emotional problems associated with the abuse of alcohol; March and June 1989 Cypress Hospital; and Lafayette General Hospitalnumerous admissions for seizures related to withdrawal from alcohol and attempted suicide on March 6, 1989. The record further establishes that Pitre was admitted to Cypress Hospital in April of 1993 for abusing Darvocet, Lortab, and Tylox. Likewise, on October 9, 1993, Pitre was taken to Abbeville General Hospital for an overdose of pain medication; on that same date, after discharge from Abbeville General, he was brought to the emergency room of Lafayette General because of another apparent overdose of pain medication.
Dr. Sidney J. Dupuy, III, a psychiatrist, testified about his treatment of Pitre. He testified that he began treating Pitre in 1989 while Pitre had been admitted to a chemical dependency unit. He treated him for alcoholism and depression related to Pitre's inability to return to work following an accident. His treatment of Pitre for alcoholism and depression continued in 1990 until March 12, 1991; at the time of his last examination, Dr. Dupuy felt that Pitre had shown some improvement, although he periodically got very depressed.
Dr. Dupuy did not see Pitre again until December 23, 1992. At that time, Pitre told Dr. Dupuy that he had been injured on July 3, 1991, that he attempted to return to work in 1992, that his back condition continued to deteriorate, and that he had to leave his employment. Based on that history, Dr. Dupuy opined that Pitre was suffering from a continuation and worsening of his depression and that Pitre should not work. Dr. Dupuy stated at his November 29, 1993, deposition that he had not seen Pitre since August 23, 1993.
Dr. William Cloyd, a psychiatrist, provided an independent psychological Revaluation of Pitre on September 28, 1993. Dr. Cloyd opined that psychological problems Pitre suffered *985 from did not stem from the 1991 accident. Instead, he testified that Pitre's psychological problems were a continuation of past health problems, poor coping skills, and his 1988 injury.
Another source of medical information for the hearing officer was provided by Dr. Lyle LeCorgne, a clinical psychologist. Dr. LeCorgne evaluated Pitre when he was admitted to Cypress Hospital on November 5, 1993, following a drug overdose. Dr. LeCorgne stated that there was a strong possibility that Pitre's physical symptoms were the result of manipulative behavior associated with litigation and closely connected to his history of substance abuse.
After considering the testimony of Pitre's psychological problems, the hearing officer stated in her written reasons for judgment:
In addition to his physical complaints, Mr. Pitre suffers from serious psychological problems, most of which predated the July 1991 accident. His treating psychiatrist, Dr. Sidney Dupuy, testified in his deposition that Mr. Pitre has not been capable of working from a psychiatric standpoint since December of 1992 due to depression. Dr. Dupuy also testified that although the depression was continuing, the July 1991 accident made it become disabling. Dr. William Cloyd, the employer's choice of psychiatrist, testified in his deposition that there was no reason Mr. Pitre could not work from a psychiatric standpoint and that the July 1991 accident did not cause any major changes in Mr. Pitre's psychological conditions, rather the problems are a continuation of past psychological patterns.
The Court finds the conclusions of Dr. Cloyd to be more well founded than those of Dr. Dupuy. Dr. Dupuy failed to take into account that Mr. Pitre successfully worked for both the defendant and Stratagraph after the July incident. Further, considering the extensive documentation of Mr. Pitre's psychological and substance abuse problems both before and after the July 1991 incident, the Court thinks it is ridiculous to suggest that the incident was anything more than one small and noncontributing event over a course of years of problems.
After carefully reviewing the record and considering the hearing officer's reasons for ruling, we find that Pitre failed to prove by clear and convincing evidence that the July 1991 accident caused his psychological problems. Therefore, after considering the hearing officer's reasons for judgment in light of the well documented record, we cannot say that she was clearly wrong in her determination that the psychological problems Pitre suffered were not the result of the July 1991 accident.
For the foregoing reasons, we affirm the judgment of the hearing officer. Costs of this appeal are assessed to John Glenn Pitre.
AFFIRMED.