|!WOODARD, Judge.
This is a workers’ compensation case. This issue on appeal is whether the plaintiff is entitled to an award of medical expenses after May 5, 1992.

FACTS

Plaintiff, Elsie Lastrapes, who was employed by defendant, Martin Mills, Inc./Farley Industries (Martin Mills), injured her left wrist, in the course of her employment on October 5, 1990, while she was sewing sleeves onto shirts. Subsequently, Lastrapes brought suit against Martin Mills, requesting appropriate benefits and medical expenses. The hearing officer awarded her temporary total disability benefits of $106.32 per week from October 8, 1990 and ordered Martin Mills to pay for her surgery to alleviate her carpal tunnel syndrome in her left wrist. Lastrapes chose Dr. L. Lazaro, III, an orthopedic surgeon, who performed a carpal tunnel release on her left wrist on February 25, 1992.
Martin Mills paid Lastrapes temporary total disability benefits until May 5,1992, when Dr. Lazaro released her back to work -with no restrictions. In response, she brought another suit against Martin Mills, requesting that her benefits be |2reinstated and seeking recovery for her medical expenses after May 5, 1992 for treatment of pain in her left forearm. The case was tried on January 20, 1994. The hearing officer rendered judgment on May 25,1994, finding that there was “no medical support” for Lastrapes’ contention that she was disabled; however, the hearing officer awarded her medical expenses that her attorney had paid for treatment of pain in her left forearm after May 5, 1992.
Martin Mills appeals from that judgment and asserts that the hearing officer erred in awarding Lastrapes medical expenses after May 5, 1992.

LAW

La.R.S. 23:1203(A) provides, in pertinent part, that “In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal,_” Under La.R.S. 23:1203, a worker’s medical expenses are compensa-ble only if they are occasioned by the work-related injury. Charles v. Aetna Casualty and Surety Company, 525 So.2d 1272 (La. App. 3 Cir.), writ denied, 531 So.2d 480 (La.1988). The claimant must establish her claim for medical benefits and show that they are related to the work accident to a reasonable certainty and by a preponderance of the evidence. Id. A workers’ compensation claimant is not entitled to medical benefits if there is no objective evidence of an injury for which she is seeking the benefits. Fusilier v. Slick Construction Company, 94-11 (La. App. 3 Cir. 6/1/94); 640 So.2d 788.
*187 Martin Mills argues that Lastrapes is not entitled to medical benefits because she did not prove any objective findings of an injury to her left forearm. After a thorough review of the relevant facts in the record, which are enunciated below, we agree.
Dr. Lazaro testified that on May 5, 1992, Lastrapes was “doing well, healed, clean....” and “discharged her with an eight percent impairment to the hand with no restrictions to duty.” Dr. Lazaro stated that the next time he saw Lastrapes was on January 28, 1993, when she complained of pain in her left forearm. After examining her, Dr. Lazaro indicated that there was “no explanation of etiology” of her subjective complaints of pain. He opined at that time she might have pronator syndrome, but he could not confirm this diagnosis because all tests that he performed on her were “normal.” When Lastrapes came to see him again in February, still complaining of |3pain in her left forearm, he stated that he “couldn’t diagnose anything in Ms. Lastrapes that was treatable.”
After Dr. Lazaro could find no objective signs of an injury to her left forearm, on April 1993, Lastrapes went to see Dr. Robert L. Morrow, Jr., an orthopedic surgeon. Dr. Morrow opined that she had “left forearm discomfort, questionable etiology, possible chronic insertion tendinitis versus bursitis.” When Dr. Morrow was asked whether her subjective complaints of pain were related to her carpal tunnel syndrome, he stated that “as far as a direct relationship between the two, on the basis of a neurological compromise, I don’t think that there is.” In discussing his treatment of Lastrapes, Dr. Morrow unequivocally testified, in part, that:
Q. Okay. So, even though you can’t say where the source is, the proximal forearm discomfort is based simply on her subjective complaints of pain and discomfort; correct?
A. Correct.
Q. Okay.
A. And her reaction to my palpation, which essentially is subjective.
Q. Yes. Okay. All the testing, including MRIs, EMGs, both before and while you were treating her have come up negative or within normal limits?
A. Correct.
Q. And I think the additional studies performed at the instance of Dr. Lazaro, which you referred to in the beginning— latext agglutination, LE prep, and sedimentation rate, CBCs, uric acid — all of those within normal limits?
A. Yes.
Finally, Dr. Morrow felt that it might be a possibility that Lastrapes was fabricating her pain because he could not find “an operable lesion” and all tests performed on her came back “normal.”
In April 1993, Dr. Joe A. Morgan, on orthopedic surgeon, examined Lastrapes at Martin Mills’ request. Dr. Morgan testified that X-rays taken of her left hand, wrist, and elbow were within normal limits. He also mentioned that her “forearms had equal girth of nine and one half inches at the same level” which indicated to him that her “arms are probably being used in about the same way.” In describing his examination of Las-trapes, he clearly stated that:
LQ. All right, let me see if I understand what you are telling me. Even though she’s told you by way of history that she was having trouble in the area of the elbow that you described, when you tested—
A. I then went to test it. I put my thumb there and I said, ‘Is this where it hurts?’ She said, “Yes, it hurts.’ Now, I then see if I can reproduce the tenderness by testing other areas within an inch or two around that. I just keep moving my thumb around and then I keep — I will say, ‘Now, is this where it hurts?’ “Yes, that’s where it hurts.’ And I’ll go back to the original place, and I’ll put pressure, and I don’t get a ■withdrawal, so that tells me that these complaints really aren’t valid. That’s what I mean when I say it’s not reproducible.
Q. Which raises in your mind as a practitioner the question of whether or not she is being truthful in any of her complaints, correct?
*188 A. That’s right.
Finally, Dr. Morgan stated that he could not “corroborate” the pain in her left forearm through an orthopedic examination, that he would allow her to return to work, and that she did not need further medical treatment.
In the case sub judice, all physicians stated that they could not find objective evidence of Lastrapes’ subjective complaints of pain. Further, Drs. Lazaro and Morrow, her treating physicians, could not relate her pain in her left forearm to the work-related injury. Thus, we conclude that the hearing officer was clearly wrong in awarding her medical benefits after May 5, 1992. See Steven v. Liberty Mutual Insurance Company, 509 So.2d 720 (La.App. 3 Cir.1987).

CONCLUSION

For the foregoing reasons, the judgment of the hearing officer is reversed. Costs of this appeal are assessed against Elsie Lastrapes.

REVERSED.