677 So.2d 1132 (1996)
Robert W. FRITZ, Plaintiff-Appellant,
v.
HOME FURNITURE-LAFAYETTE, Defendant-Appellee.
No. 95-1705.
Court of Appeal of Louisiana, Third Circuit.
July 24, 1996.
*1133 Randall Scott Iles, for Robert W. Fritz.
Katherine Marie Loos, Lafayette, for Home Furniture-Lafayette.
Before SAUNDERS, AMY and GREMILLION, JJ.
AMY, Judge.
This is a worker's compensation case. Plaintiff appeals from the hearing officer's ruling that he is not entitled to temporary total disability benefits, medical expenses, attorney's fees and statutory penalties. For the reasons which follow, we affirm.

DISCUSSION OF THE RECORD
On May 18, 1993, plaintiff, Robert Fritz (Fritz), who was employed by defendant, Home Furniture-Lafayette (Home Furniture), injured his head, neck, and lower back area when helping Robert Pitre, a co-worker, place a recently purchased sofa bed in the home of a customer. Fritz suffered his alleged injuries when he tripped, fell backwards, and hit his head and neck on the arm of a sofa that was already in the house.
Home Furniture paid Fritz temporary total disability (TTD) benefits from the date of the accident until December 1993, for a total of $4,117.37, when it terminated benefits because of the inability of some of Fritz's physicians *1134 to diagnose the source of his continuing complaints. Additionally, Home Furniture paid Fritz's medical expenses until December 1993.
On April 3, 1994, Fritz filed suit against Home Furniture, requesting reinstatement of TTD benefits and medical expenses. Also, Fritz alleged that Home Furniture was arbitrary and capricious in terminating his benefits and, therefore, he was entitled to attorney's fees and statutory penalties. Home Furniture answered his suit, denying any liability under the worker's compensation statutes.
After a hearing, the hearing officer ruled that (1) Fritz failed to prove by clear and convincing evidence that he is temporary totally disabled; (2) the diagnostic tests do not reveal that Fritz needs further medical treatment; and (3) Home Furniture properly terminated benefits on October 28, 1993 and, as such, Fritz was not entitled to attorney's fees and statutory penalties.
Fritz appeals from that judgment and asserts that the hearing officer erred in failing to find that he (1) was temporarily and totally disabled and (2) was entitled to a myelogram under La.R.S. 23:1203.

LAW AND DISCUSSION

DISABILITY BENEFITS
An employee seeking TTD benefits must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment, regardless of the nature or character of the work, including but not limited to employment while working in pain. La.R.S. 23:1221(1)(c); Anderson v. Biedenharn Bottling Group, 95-646 (La.App. 3 Cir. 11/2/95); 664 So.2d 588; Rosella v. DeDe's Wholesale Florist, 607 So.2d 1055 (La.App. 3 Cir.1992). The "clear and convincing" standard is a heavier burden of proof than the usual civil case standard of "preponderance of the evidence" but is less burdensome than the "beyond a reasonable doubt" standard of a criminal prosecution. Chatelain v. State, DOTD, 586 So.2d 1373 (La.1991); Succession of Bartie, 472 So.2d 578 (La.1985); Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976); Bundren v. Affiliated Nursing Homes, Inc., 94-808 (La.App. 3 Cir. 2/1/95); 649 So.2d 1177. Therefore, to prove a matter by "clear and convincing" evidence means to demonstrate that the existence of a disputed fact is highly probable, in other words, much more probable than not. Pitre v. Oilfield Production Contractors, 94-961 (La.App. 3 Cir. 3/8/95); 651 So.2d 980. Also, to carry the burden of proving disability by clear and convincing evidence, the claimant must introduce objective medical evidence of the disabling injury. Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95); 657 So.2d 449.
However, the issue of disability presents a legal, not purely a medical, question which must be determined after considering all of the medical and lay testimony in the record. Walker v. Halliburton Services, Inc., 93-722 (La.App. 3 Cir. 3/1/95); 654 So.2d 365, writ denied, 95-1507 (La. 9/22/95); 660 So.2d 481. In other words, the hearing officer determines whether a claimant has met his burden of proving disability only after weighing all the medical and lay testimony. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993). Thus, the issue of disability is a factual determination. Creel v. Concordia Electric Cooperative, Inc., 95-914 (La.App. 3 Cir. 1/31/96); 670 So.2d 406, writ denied, 96-0577 (La. 4/19/96); 671 So.2d 923. Factual findings of a hearing officer may not be disturbed by an appellate court unless the factual findings are manifestly erroneous or clearly wrong. Comeaux, 657 So.2d 449. In order for an appellate court to set aside a hearing officer's factual finding, the appellate court must conclude from the record, viewed in its entirety, that a reasonable factual basis did not exist for the hearing officer's finding and that this finding is clearly wrong. Guidry v. Picadilly Cafeterias, Inc., 95-12 (La. App. 3 Cir. 5/24/95); 657 So.2d 325, writ denied, 95-1601 (La.9/29/95); 660 So.2d 870.
The following evidence was introduced at the hearing.
Robert Fritz was the only witness to testify live at the hearing. Fritz testified that, immediately after the work accident, he began *1135 to suffer from pain in his neck, lower back, and right shoulder. He stated that he did not go to work the next day because he was "hurting." At that point, he indicated that he went to see Dr. Kirtland Swan, who recommended conservative treatment such as physical therapy and prescribed Tylox, Flexeril, Tylenol # 4, and Lortab. After several weeks, when Fritz's pain did not improve, Dr. Swan referred him to a specialist, Dr. James R. Lafleur, an orthopedic surgeon.
Dr. Lafleur examined Fritz on July 13, 1993 and diagnosed a cervical myofacial strain. Dr. Lafleur noted that "x-rays of the cervical spine are within normal limits, and show no signs of fracture or dislocation of the facets." Dr. Lafleur also recommended conservative treatment such as physical therapy and prescribed Parafon Forte and Lortab # 5. In August 1993, Dr. Lafleur referred Fritz to Our Lady of Lourdes Medical Center in Lafayette, Louisiana, for in-house physical therapy for one week. Dr. Lafleur also noted that an MRI performed on Fritz was "essentially within normal limits." On October 28, 1993, Dr. Lafleur discharged Fritz because he was unable to determine the cause of Fritz's subjective complaints of pain in his neck, lower back and right shoulder.
On October 6, 1993, Fritz was examined by Dr. Robert D. Martinez, a neurologist. After a physical examination, Dr. Martinez became "very suspicious" as to whether Fritz had a "significant problem." After a physical examination, Dr. Martinez stated that he felt no spasms in the neck muscles, nor in the upper or lower spine area. Dr. Martinez noted the possibility that Fritz was either magnifying his symptoms or malingering because he noted the difficulty in reconciling Fritz's subjective complaints of pain with his apparently normal tests. Dr. Martinez was also suspicious of Fritz's complaints of subjective pain because he personally observed Fritz walk normally to his automobile and drive away, just moments after having given a history and exam ruling out either possibility.
On November 9, 1993, Fritz went to see Dr. Louis Blanda, an orthopedic surgeon, on the recommendation of a friend. At that time, Fritz complained that he was suffering pain in his neck and right shoulder. Dr. Blanda ordered a cervical MRI, which was approved by the worker's compensation carrier. On January 18, 1994, Dr. Blanda, after reviewing the MRI, noted that he believed the MRI showed a herniated disc at C5-6 which he believed had "probably been his trouble all along." Dr. Blanda then recommended a three week course of physical therapy and prescribed medications. Dr. Blanda indicated that if Fritz did not respond to the physical therapy, then "a myelogram and CAT scan and some EMG studies" would be required, followed by surgery if demonstrated necessary by these tests. Dr. Blanda saw Fritz on August 30, 1994 and March 14, 1995, and, again, repeated his recommendations for testing and possible surgery, if the testing confirmed a disk herniation.
On August 10, 1994, Dr. J. Frazer Gaar, an orthopedic surgeon, conducted an independent medical examination of Fritz on behalf of the Office of Worker's Compensation. After taking Fritz's history, performing a physical examination, and reviewing all the diagnostic studies, Dr. Gaar stated:
Cervical x-rays reveal no evidence of fractures, subluxations. The intervertebral foramen are open. The disk spaces are of adequate height. IMPRESSION: Within normal limits.
I reviewed previous films from Dr. Lafleur's office as well as the most recent MRI study of December 1993 from Southwest Medical Center. This shows in my opinion some very minor bulging at C5-6 and C6-7. On the axial studies I am not impressed with any real prominent disk prolapses at the C5-6 or the C6-7 level. From a clinical standpoint, I do not feel the picture correlates indicating any radiculopathy secondary to a cervical disk. I do not feel that there is a surgical lesion here. The clinical picture does not reveal anything objective. His responses are inconsistent and in some cases exaggerated.
I feel he has reached maximum medical recovery. I do not feel further tests are indicated at this time. With this in mind, I feel he should be fit to return to his previous work and activities.
*1136 Fritz testified that, at the time of the hearing, he suffered from headaches and pain in his neck and right shoulder. Fritz further testified that since the work accident, he worked part-time for his brother-in-law, Mike Menard, who is a carpenter. Fritz stated that he would pick up trash, cut boards, and hand materials and tools to Mike. Also, Fritz indicated that he had to climb on roofs, and sometimes lift materials that weighed 40 to 50 pounds. He further stated that this work often required that he stoop and bend. When asked if any of this work caused him any physical difficulty, Fritz unequivocally responded "No, ma'am." Fritz testified that since the accident, he has continued to perform household chores such as taking out the garbage, washing the cars, and mowing the lawn. Finally, Fritz acknowledged that he feels like he is capable of doing some kind of work.
After a review of the medical evidence and Fritz's testimony, we are unable to conclude that the hearing officer was clearly wrong in finding that Fritz failed to prove by clear and convincing evidence that he is unable to engage in any gainful occupation and, therefore, that he is not entitled to TTD benefits.

MEDICAL EXPENSES
Fritz argues that the hearing officer erred in finding that Home Furniture was not required to provide him with a myelogram and post-myelogram CAT scan recommended by Dr. Blanda. We find no merit in this contention.
La.R.S. 23:1203(A) provides in part that "the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." Under La.R.S. 23:1203(A), a claimant's medical expenses are compensable only if they are occasioned by a work-related injury. Fruge v. Gravity Drainage District No. 5., 94-685 (La.App. 3 Cir. 12/7/94); 647 So.2d 561, writ denied, 95-66 (La.3/10/95); 650 So.2d 1180. "Costs of medically necessary diagnostic tests recommended by the treating physician are recoverable when needed to determine the proper treatment for the patient, and the burden rests on the plaintiff to prove by a preponderance of the evidence that the required tests are necessary." Harris v. Langston Company, Inc., 94-1266 (La.App. 3 Cir. 4/5/95); 653 So.2d 789, 796, writ denied, 95-1178 (La. 6/23/95); 656 So.2d 1020. The hearing officer's determination of whether a claimant is entitled to medical expenses is a factual question; thus, an appellant court cannot set aside this factual finding unless it is clearly wrong or manifestly erroneous. See Lastrapes v. Martin Mills/Farley Industries, 94-1394 (La.App. 3 Cir. 5/3/95); 657 So.2d 185.
As previously stated, Dr. Blanda, Fritz's treating physician, recommended that Fritz undergo a myelogram and CAT scan, and, surgical treatment if the results from those medical tests were "positive." However, Dr. Gaar, who performed the independent medical examination on behalf of the Office of Worker's Compensation, specifically stated that (1) Fritz had reached "maximum medical recovery"; (2) no further medical tests were needed; and (3) Fritz was "fit" to return to his "previous work and activities." Further, Dr. Lafleur noted that, on October 28, 1993, he was unable to "determine a cause" for Fritz's complaints; that Fritz's MRI was "essentially within normal limits"; and that he had "nothing further" to offer Fritz at that time. Finally, Dr. Martinez opined that he was "very suspicious" of Fritz's subjective complaints of pain.
We find that there was a reasonable basis in the record for the hearing officer to determine that Fritz had failed to meet his burden of proof regarding the necessity of the medical expenses. While the treating physician's testimony is normally given substantial weight, Martin v. Red Simpson, Inc., 94-817 (La.App. 3 Cir. 2/1/95); 649 So.2d 1155, the court appointed expert's opinion must be considered as prima facie evidence of the facts therein stated. La.R.S. 23:1123. See also Vidrine v. Magnolia Liquor Co., Inc., 533 So.2d 1329 (La.App. 3 Cir.1988) (The opinion of a court appointed physician is entitled to significant weight since that expert is a disinterested party and therefore, should have entirely objective conclusions).
*1137 In the present case, the medical evidence was clearly in conflict on the issue of whether Fritz needed additional medical testing. The hearing officer was faced with two reasonable and permissible views of the evidence, that espoused by Dr. Blanda and that of Drs. Gaar and Martinez. The hearing officer chose to believe the latter. Therefore, the hearing officer made a factual finding based on credibility determinations, which in the absence of manifest error, cannot be reversed on appeal. See Johnson v. Temple-Inland, 95-948 (La.App. 3 Cir. 1/31/96); 670 So.2d 388, writ denied, 96-544 (La. 4/19/96); 671 So.2d 919. We conclude that the hearing officer was not manifestly erroneous in denying further medical testing.

DECREE
For the foregoing reasons, the hearing officer's decision is affirmed. Costs of this appeal are assessed against plaintiff-appellant, Robert Fritz.
AFFIRMED.
SAUNDERS, J., dissents and assigns written reasons.
SAUNDERS, Judge, dissenting in part.
The absence of manifest error in a hearing officer's determination that a claimant has not proven his case for temporary total disability does not in and of itself disqualify his appeal for medical testing or expenses. See e.g., Belaire v. L & L Oil Co., 93-1198 (La. App. 3 Cir. 5/4/94); 636 So.2d 1177.
Diagnostic tests which treating or consulting physicians deem necessary in order to make a definitive diagnosis or recommendation for treatment are part of the necessary medical treatment which the employer and its insurer are obligated to furnish to injured workers. Stelly v. United Parcel Service, 600 So.2d 156 (La.App. 3rd Cir.1992); LeDoux v. Robinson, 568 So.2d 244 (La.App. 3rd Cir.1990).
Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278, 1282 (La.App. 3 Cir.1993).
In his second assigned error, claimant suggests that the hearing officer erred in holding that defendant was not required to provide him with the myelogram and post-myelographic CAT scan recommended by Dr. Blanda. He notes that the evidence suggests that Dr. Blanda had long stressed the need for this additional testing in order to conclusively diagnose claimant's ailments and, depending on the results, his course of treatment. Claimant further observes that each of the doctors, with the exception of Dr. Gaar who performed the IME, reached his conclusions without the benefits of the tests that Dr. Blanda, claimant's treating physician, recommended.
In response, defendant cites the case of Lastrapes v. Martin Mills/Farley Ind., 94-1394 (La.App. 3 Cir. 5/3/95); 657 So.2d 185, for the proposition that a workers' compensation claimant is not entitled to medical benefits if there is no objective evidence of an injury for which he is seeking the benefits.
La.R.S. 23:1203(A) provides, in pertinent part, that "In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal,...." Under La.R.S. 23:1203, a worker's medical expenses are compensable only if they are occasioned by the work-related injury. Charles v. Aetna Casualty and Surety Company, 525 So.2d 1272 (La.App. 3 Cir.), writ denied, 531 So.2d 480 (La.1988). The claimant must establish her claim for medical benefits and show that they are related to the work accident to a reasonable certainty and by a preponderance of the evidence. Id. A workers' compensation claimant is not entitled to medical benefits if there is no objective evidence of an injury for which she is seeking the benefits. Fusilier v. Slick Construction Company, 94-11 (La.App. 3 Cir. 6/1/94); 640 So.2d 788.
Lastrapes, 657 So.2d at 186.
In my view, both the law and evidence support appellant's contention. Both Lastrapes and Fusilier are distinguished on their facts, for in this case, claimant did show objective symptoms which were noted by Dr. Blanda when he detected not only spasms on physical examination but a herniated disc *1138 at C5-6 upon reviewing claimant's recent MRI.
Thus, presented with the conflicting testimony of one physician who treated his patient for a year and a half, who diagnosed objective symptoms and who on more than one occasion requested additional tests, and another who saw claimant on only one occasion for diagnostic purposes before concluding otherwise, it is my view that claimant has long been entitled to the diagnostic testing requested by his treating physician. See and compare, Harris v. Langston Company, Inc., 653 So.2d 789 and Benoit v. PET, Inc., 93-1019 (La.App. 3 Cir. 4/6/94); 635 So.2d 620, writ denied, 94-1168 (La.6/24/94); 640 So.2d 1352.
Accordingly, I dissent from the position of the majority that denies further medical testing.