STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**16-727**

ACADEMY, LTD.

VERSUS

DAVITA SMITH

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 10-03420
SHARON MORROW, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
Marc T. Amy, Judges.

**AFFIRMED.**

**Bryan D. Scofield**
**Scofield & Rivera, LLC**
**P. O. Box 4422**
**Lafayette, LA 70502**
**Telephone: (337) 235-5353**
**COUNSEL FOR:**
        **Plaintiff/Appellee – Academy, LTD**

**Davita Smith**
**In Proper Person**
**237A Buford Street**
**Raceland, LA 70394**
**Telephone: (985) 686-1152**
        **Defendant/Appellantt – Davita Smith**

**THIBODEAUX, Chief Judge.**

An on-the-job injury occurred on August 24, 2007, while Plaintiff, Ms. Davita Smith, was employed by the Defendant, Academy Sports and Outdoors ("Academy") in Lafayette, Louisiana. Ms. Smith appeals a trial court judgment denying her additional workers' compensation benefits for that accident. Based on stipulations in the record, the primary issues on appeal are whether Ms. Smith is entitled to ongoing medical treatment and whether Academy is responsible for penalties and attorney fees due to the termination of benefits.

For the following reasons, we affirm the judgment of the trial court.

## I.

## ISSUE

We must determine:

(1) whether Ms. Smith is entitled to continued medical treatment; and

(2) whether Academy is responsible for penalties and attorney fees due to termination of benefits. [1]

## II.

## STANDARD OF REVIEW

An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The findings of the Worker's Compensation Judge is subject to the

---

[1] Ms. Smith entreats us to consider several issues on appeal, such as due process under the American with Disabilities Act, departure from the Federal Rules of Civil and Criminal Procedure, and whether the Workers' Compensation Judge failed to discuss compromise settlement before approval. We decline to consider such issues as Ms. Smith stipulated during trial to the two issues now before us; thus, those are the only issues we are now considering.

manifest error-clearly wrong standard of review. *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/96), 696 So.2d 551 (La. 7/1/97). In *Banks*, the Louisiana Supreme Court elaborated on the application of that standard:

> In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman*, 93-1530 at p.5, 630 So.2d at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

*Id. at 556.*

## III.

## <u>FACTS AND PROCEDURAL HISTORY</u>

This is a workers' compensation case filed on behalf of Ms. Smith for a work-related incident that occurred on August 24, 2007, at Academy's store in Lafayette, La. On that date Ms. Smith claims that she was injured when a box of duck decoys fell on her back. The height of the drop and the weight of the box vary in the medical histories given to her doctors, but there appears to be no dispute about the actual accident. Ms. Smith's chief complaint following the accident was lower back pain and pain in her right leg.

Ms. Smith was initially treated by her choice of physicians, which included Dr. Gregory Gidman, Dr. David Muldowny, and Dr. Edward Haight. Ms. Smith was also examined by Dr. John Sklar in connection with a second medical

opinion for Academy, and Dr. Ilyes Munshi, who was appointed by the medical services section of the Office of Workers' Compensation as an Independent Medical Examiner ("IME").

Following the accident, Ms. Smith's initial treating physician was Dr. Gregory Gidman, an orthopedic surgeon located in Lafayette, Louisiana. Dr. Gidman's 2008 report stated: "No pathology has been identified to explain examinee's symptomology. There is no anatomic abnormality to prevent this examinee, in my opinion from resuming activities at work." Dr. Gidman further noted that his physical exam was normal, and that x-rays of Ms. Smith's lumbar spine and pelvis, as well as her MRI, were normal. Dr. Gidman concluded that Ms. Smith was not in need of any further testing or surgical intervention and that "her treatment should be a self-directed home therapy program and over-the-counter analgesics," based solely upon her subjective complaints.

Ms. Smith then switched treating physicians and began seeing Dr. Muldowny, an orthopedic surgeon located in Lafayette, Louisiana. Dr. Muldowny released Ms. Smith from his care in March of 2008. He reported that her lumbar MRI was normal and that he "really [did] not think there are any more diagnostic studies that would be useful in determining with certainty a specific diagnosis."

Having been released from the medical care of Dr. Gidman and Dr. Muldowny, Ms. Smith began treating with Dr. Haight, a neurologist in Houma, Louisiana. Dr. Haight diagnosed Ms. Smith with a right sciatic nerve stretch injury and low back pain. He found Ms. Smith's lumbar MRI to not be entirely normal, and he believed there to be some bulging in the thoracic area which, he testified, "could" cause some back pain; however, that would not explain her leg pain.

3

Academy obtained a separate medical opinion ("SMO") from Dr. Sklar. Dr. Sklar's objective physical examination findings were entirely normal, and he disagreed with the sciatic stretch diagnosis of Dr. Haight. He noted that Ms. Smith's MRI was entirely normal and, based upon his physical examination, he recommended that Ms. Smith "get on with her life, get back to work and get active." Dr. Sklar also testified that Ms. Smith could return to full duty work without restrictions and that she needed no further medical treatment.

Finally, the Office of Workers' Compensation ordered an IME with Dr. Munshi, a board certified neurosurgeon. Dr. Munshi's report stated that both of Ms. Smith's MRI films were normal and that he did not think "that she had any significant radicular symptoms nor do I find any significant findings on the MRI." Dr. Munshi further stated: "I do not think that Ms. Smith needs anymore treatment than she has already received. In fact, it would be best for her to gradually get weaned off whatever medications she is currently on." Dr. Sklar and Dr. Munshi both opined that Ms. Smith had received an appropriate workup and course of treatment, including physical therapy and chiropractic treatment. Academy terminated payment for medical subsequent to the issuance of Dr. Munshi's IME report.

In summary, Doctors Gidman, Muldowny, Sklar, and Munshi found nothing wrong with Ms. Smith. Dr. Haight admitted that his opinion was at best a "soft finding." After December 2009, there is no medical evidence from a treating physician until January 2015, when Ms. Smith began seeing Dr. Richard Epter with the Augusta Pain Center. At that time, Ms. Smith complained of neck pain, thoracic back pain, low back pain, hip and foot pain, and pain in both shoulders. Dr. Epter treated her for sacroiliitis and chronic pain. However, nowhere in these

records is there any reference to the August 2007 work accident. Instead, the January 27, 2015 progress note reflects a pain onset date of October 2014.

Academy argues that they have properly paid Ms. Smith weekly indemnity benefits and have provided her with reasonable and necessary medical treatment for as long as it was necessary. Ms. Smith progressed to the point where she could return to work and weekly indemnity benefits were no longer necessary. Thus, the only issue before the trial court was whether Ms. Smith was entitled to continued medical treatment.

The WCJ found in favor of Academy stating that Ms. Smith's five year gap in treatment made it impossible to relate her current pain and injury complaints to her 2007 accident at work.

IV.

## LAW AND DISCUSSION

Louisiana Revised Statutes 23:1203 states that a worker's medical expenses are compensable only if they are caused by a work-related injury. "The claimant must establish his claim for medical benefits and show that they are related to the work accident to a reasonable certainty and by a preponderance of the evidence." *Charles v. Aetna Cas. & Sur. Co.*, 525 So.2d 1272, 1275 (La.App. 3 Cir.), *writ denied*, 531 So.2d 480 (La.1988). The January 27, 2015 report from Augusta Pain Center documented her chief complaints as neck, thoracic, low back, hip, and foot pain. However, the report documented that these complaints began in October of 2014, over seven years following her accident at Academy. Additionally, the March 18, 2015 report from Augusta Pain Center referenced sacroiliitis. These symptoms, however, began in 2015. Ms. Smith acknowledged

5

providing the information to Augusta Pain Center concerning the history of her complaints, and the Augusta Pain Center documented the complaints as starting in 2014 and 2015.

The Workers' Compensation Judge cogently stated: "Considering the 5 year gap in treatment, the court is unable to relate her current complaints to the August 24, 2007 work accident. There is a 5 year gap in treatment, the work accident is not referenced and the complaints are different than the complaints 5 year[s] previous. Under the circumstances, the evidence does not preponderate in Ms. Smith's favor." We agree with the WCJ. The five year gap in Ms. Smith's medical treatment undermines her causation argument. There is not sufficient evidence to satisfy Ms. Smith's argument that Academy should continue paying for her medical treatment considering that her pain does not stem from her 2007 work accident. Moreover, the parties have further stipulated that Ms. Smith was released to work and has at times returned to work since her injury. Specifically, Doctors Gidman, Sklar, and Munshi released Ms. Smith to return to unrestricted duties.

In addition, "[a]n IME's medical conclusions should be given significant weight because the IME is an objective party. However, the opinion of the IME is not conclusive, and the workers' compensation judge must evaluate all of the evidence presented in making a decision as to a claimant's medical condition." *Richardson v. Lil' River Harvesting*, 09-1090 (La.App. 3 Cir. 3/10/10), 33 So.3d 418, 419; *see also Fritz v. Home Furniture-Lafayette*, 95-1705 (La.App. 3 Cir. 7/24/96), 677 So.2d 1132. The IME, Dr. Munshi, stated that Ms. Smith had received an appropriate workup and course of treatment, including physical therapy and chiropractic treatment, and he felt that it was appropriate to

6

wean her off of her medications. More specifically, Dr. Munshi stated that Ms. Smith's MRI films were normal and that he could not find any evidence of deficit or serious injury. While all credible evidence must be considered, we find it significant that the IME found Ms. Smith to be without serious injury and capable of returning to work free of medical treatment and medications.

*Attorney Fees and Penalties*

Having found that the evidence exculpates Academy from any further liability, the issue of attorney fees and penalties becomes moot.

V.

## CONCLUSION

Considering the foregoing and the record as a whole, we can find no manifest error in the WCJ's finding that Ms. Smith is no longer entitled to medical treatment. Costs of this appeal are assessed to the Appellant, Ms. Davita Smith.

**AFFIRMED**.