514 So.2d 711 (1987)
Linda Webb KILLEN, Appellant,
v.
CONTINENTAL INSURANCE COMPANY and Louisiana State University, Appellees.
No. 19056-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1987.
Rehearing Denied November 25, 1987.
Nelson, Hammons & Johnson by Walter D. White, Shreveport, for appellant.
Watson, Blanche, Wilson & Posner by Debra A. Templet, Baton Rouge, for appellees.
Before MARVIN, FRED W. JONES, Jr. and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
From a judgment awarding certain worker's compensation benefits but denying others plaintiff appealed, contending the trial judge erred in failing to award supplemental earning benefits and rehabilitation benefits, assigning only a 50% permanent partial disability rating, and failing to award penalties and attorneys fees.
Linda Killen was employed in August 1983 as a health and physical education instructor by Louisiana State University at Shreveport ("LSUS") for the forthcoming school year at an annual salary of $20,000. On October 24, 1983, while performing her teaching duties Mrs. Killen was struck in the temple by a student who was falling *712 from a balance beam. After experiencing some loss of consciousness, Mrs. Killen was taken to a hospital where she was treated for a concussion. The patient complained of double vision and headaches.
Mrs. Killen was hospitalized for four days and was off work until November 4, 1983, for which period worker's compensation benefits were paid.
After returning to work at LSUS, Mrs. Killen continued to experience double vision and had to limit her physical activities. She consulted Dr. Swearingen, a Shreveport ophthalmologist, on November 29, 1983. After an examination this physician made a diagnosis of constant diplopia, or double vision, in any field of gaze. Dr. Swearingen thereafter saw Mrs. Killen on a number of occasions. Following a consultation in February 1984, he referred her to Dr. Gunter Von Noorden of Houston, Texas, an ophthalmologist and specialist in strabismus (imbalance of ocular motor system). Dr. Von Noorden had treated Mrs. Killen several years before for eye problems, correcting the difficulty by surgery in 1979.
Because of continued double vision problems, Mrs. Killen was seen by Dr. Von Noorden in May 1984. In July 1984 Dr. Von Noorden performed surgery to correct the visual imbalance, but that procedure proved unsuccessful. Mrs. Killen remained in the hospital four days and then returned home to recuperate for two weeks.
In February 1984 Mrs. Killen had been informed by LSUS that her teaching contract would not be renewed at the end of the school year. In October 1984 she was employed as an elementary school librarian in Longview, Texas at an annual salary of $15,000 and continued this employment until May 1985. She was then employed as a third grade teacher in a Catholic school in Shreveport at an annual salary of $10,000.
Mrs. Killen filed this suit against LSUS and its insurer to recover worker's compensation benefits, penalties and attorney fees and trial was had in August 1985.
At the trial the 37 year old plaintiff testified she had a master's degree plus 18 hours from Louisiana Tech in health and physical education, and a minor in library science. She had eye problems as the result of an automobile accident in 1977, but those problems (also involving double vision) were resolved by surgery performed by Dr. Von Noorden in March 1979. No further eye problems were experienced until this accident in October 1983.
Mrs. Killen stated that since this accident she has suffered from double vision, headaches and nausea. As a result, she has been unable to teach physical education or engage in any work requiring that type of activity. She was granted a temporary teaching certificate in Texas but could not renew this employment because of her inability to arrange for completion of required course work for certification. Despite efforts to find another position as a school librarian, Mrs. Killen testified she was unsuccessful and was compelled to take the low paying position as an elementary teacher in the Shreveport private school. She allegedly lacked between 65 and 90 college hours to qualify as an elementary teacher in a state public school.
Dr. Von Noorden (testifying by deposition) stated that after the 1979 surgery Mrs. Killen apparently had remained free of eye problems until this accident. Following his May 1984 examination he concluded that Mrs. Killen suffered from a post-traumatic fusion deficiency, a condition about which little is known, though generally associated with some kind of head trauma. This problem, according to the doctor, is related not to the eye muscles, but to the neurological function of the fusion centers of the brain, about which the information is scarce.
Dr. Von Noorden operated on Mrs. Killen in July 1984 and resected the right lateral rectus muscle. After her discharge from the hospital Dr. Von Noorden saw Mrs. Killen again on August 16, 1984 and his initial diagnosis of post-traumatic fusion syndrome was confirmed.
This witness saw plaintiff again on November 6, 1984, at which time he clarified the date of her accident (about which incorrect information had been given to the insurance *713 company) and wrote the insurance company to clarify the record. Dr. Von Noorden saw Mrs. Killen again on March 19, 1985, and attempted to correct her eye problem with prisms. She returned on May 14, 1985 for the last time complaining of headaches, dizziness and nausea. She reported only temporary relief from the prisms and was still suffering from the same eye condition, though her condition seemed to be changing from extropia to estropia (eyes turning outward, then inward, with no apparent ability to keep them aligned).
Asked to give a prognosis, Dr. Von Noorden replied that this is a rare problem (only four cases in the literature), with the outcome difficult to predict. He had seen only 15 to 20 such patients and, while some tended to improve as they learned to accept and live with the problem, others did not. He believed Mrs. Killen's recovery would be long and drawn out, and her chances for improvement to the point of being visually comfortable not very good. It was Dr. Von Noorden's opinion that plaintiff should not return to her work as a physical education teacher since she would be in danger of another accident if she were to engage in activity requiring depth perception, which she lacks.
Dr. Swearingen testified that he had received no reports from Dr. Von Noorden concerning Mrs. Killen's surgery, but that plaintiff had returned to him on December 14, 1984 still complaining of double vision. Dr. Swearingen explained that post-traumatic fusion deficiency sometimes results after head trauma which causes an individual to have trouble "fusing" on an image, i.e. having difficulty focusing the eyes so that he sees one image rather than two, and is related to the brain center. Dr. Swearingen fitted Mrs. Killen with contact lenses in an attempt to correct her problem. The vision in one eye was blurred so that she would use the other, dominant eye. Mrs. Killen telephoned Dr. Swearingen several months later to report that she was still having eye problems and planned to return to Dr. Von Noorden.
In written reasons for judgment the trial judge ruled that plaintiff was entitled to temporary total disability benefits from July 10, 1984 (date of operation by Dr. Von Noorden) to October 10, 1984 (when she took the position as school librarian), and to medical expenses. Supplemental earnings benefits were denied because of the finding that plaintiff's inability to earn wages equal to 90% or more of her wages at the time of the accident was not a result of her injury. As to permanent partial disability, the trial court stated:
"... she will continue to suffer `double vision', entitling her to a percentage of permanent partial disability benefits. The court concludes she is entitled to a substantial percentage disability rating, with that percentage applied to her permanent partial disability benefits. Based upon all the evidence, including the supplemental evidence of Dr. Von Noorden [who had not assigned a percentage of disability] the court assigns fifty percent (50%) as the percentage disability rating."
Rehabilitation benefits were denied because of the trial judge's conclusion that "plaintiff has the necessary education, training, and experience to acquire a job with more lucrative pay than the one she presently holds."
In denying the request for penalties and attorney fees the trial court explained:
"... there was some uncertainty in establishing the correct date of plaintiff's injury for which the July surgery had been performed. Dr. Von Noorden first testified that he thought plaintiff's injury had occurred just prior to May 10, 1984 and this is the date of which he informed defendant ... Since there was a bona fide dispute as to whether the expenses incurred were work-related, the defendants had probable cause for refusal to pay benefits."
As to permanent partial disability benefits, the judgment signed by the trial court simply provides that defendants should pay to plaintiff "permanent partial disability plus judicial interest thereon from date of judicial demand until paid."
*714 Supplemental Earning Benefits
The 1983 amendments to La.R.S. 23:1221(3) changed the description of the pertinent section from "partial disability" to "supplemental earnings." The purpose of supplemental earnings benefits is to compensate the injured employee for the wage earning capacity he has lost as a result of the accident. Any work-related injury resulting in the inability of an employee to earn wages equal to 90% or more of his pre-injury wages entitles him to compensation for a percentage of this lost earning capacity.
The 1975 amendments to the Louisiana Worker's Compensation Statute emphasized partial disability as the primary remedy available to injured workers with the elimination of the "actually earned' proviso. The 1983 amendments retain this emphasis in the adoption of the pure wage loss concept of supplemental earnings benefits. Thus, any worker able to earn, but not earning, 90% or more of the former wage is not entitled to supplemental earnings benefits. Malone-Johnson, Louisiana Civil Law Treatise, Vol. 13, § 275, p. 96.
In this case the trial judge found plaintiff's securing of jobs, after her injury and termination of employment at LSUS, paying $15,000 and $10,000 per year respectively, due not to the injury but simply to other circumstances.
A plaintiff in a worker's compensation case must prove entitlement to the benefits claimed by a preponderance of the evidence. Walton v. Normandy Village Homes Ass'n., Inc., 475 So.2d 320 (La. 1985); Reynolds v. Wal Mart Stores, Inc., 445 So.2d 490 (La.App. 2d Cir.1984).
A reviewing court must give great weight to factual conclusions arrived at by a trier-of-fact, and reasonable evaluations of credibility and inferences of fact should not be disturbed even though the appellate court may feel its own evaluations and inferences are as reasonable. Cadiere v. West Gibson Products Co., Inc., 364 So.2d 998 (La.1978).
Under the circumstances, we discern no clear error in the trial judge's factual finding on this issue.
Permanent Partial Disability
As noted, the trial judge concluded plaintiff was permanently partially disabled as a result of her eye condition and assigned her a rating of 50%. However, the 1983 amendment to the Workers' Compensation Act limited benefits under this section to claimants suffering impairments greater than 50%. 1985 amendments reduced this threshold to 25%, but since plaintiff's accident occurred on October 24, 1983, the 1983 amendments govern. Consequently, under the trial court judgment by operation of law plaintiff misses by 1% an award of benefits for permanent partial disability.
There seems to be no question but that plaintiff has suffered a serious impairment to her eyes as a result of this injury. Both Drs. Von Noorden and Swearingen described in detail the handicap posed by double vision. In view of this evidence, we find that the trial judge was clearly wrong in assigning only a disability rating of 50% and increase that rating to 60%. See Lee v. Gaffney Const. Co., 474 So.2d 994 (La.App. 5th Cir.1985), writ denied, 477 So.2d 706 (La.1985); Chipman v. Insurance Co. of North America, 389 So.2d 432 (La.App.2d Cir.1980).
In order to calculate the benefits to which plaintiff is entitled it is necessary to determine which provision of the pertinent section covers her injury.
In a case involving partial impairment of both eyes from a 1979 accident, our state supreme court found La.R.S. 23:1221(4)(p) [the omnibus provision] applicable. Bordelon v. Vulcan Materials Co., 472 So.2d 5 (La.1985). This was premised upon the rationale that the injury did not fall under either the "one eye" or the "both eyes" provision. La.R.S. 23:1221(4)(i) and (j). The court concluded:
"Accordingly, this being a case not falling within any of the other provisions, and one in which the usefulness of a physical function is seriously permanently impaired, we are required by the omnibus provision to allow such compensation as is reasonable and in proportion to that *715 provided for other cases by the schedule, not to exceed sixty-six and two-thirds percent of wages for one hundred weeks." p. 10
According to the Bordelon case the maximum award to which plaintiff would be entitled for her permanent partial disability would be 66 2/3 of her average weekly wage for 100 weeks. According to the 1983 amendments the number of weeks benefits are payable is reduced proportionately by the percentage disability rating. Consequently, plaintiff is entitled to benefits under this section of $245 per week for 60 weeks.
This award is subject to a credit in favor of the defendants for the worker's compensation benefits previously paid, La.R.S. 23:1223, on a dollar for dollar basis. Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982).
Rehabilitation Benefits
The 1983 amendments to the Workers' Compensation statute provide that the employee who is unable to earn wages equal to those earned before the accident is entitled to as much as one year of vocational rehabilitation, which must be provided by the employer or insurer if needed. La. R.S. 23:1226.
It does not appear that college courses are contemplated by this provision. See Johnson, "Bound in Shallows and Miseries, the 1983 Amendments to the Workers' Compensation Statute", 44 La.L.Rev. 669, 711 (1984). The intent seems to be "vocational rehabilitation" in the traditional sense of the phrase, rather than college or professional training.
The trial judge did not err in denying this claim.
Penalties and Attorney Fees
Plaintiff claims defendants failed to timely pay benefits for the period of time during which she underwent surgery and recuperation, that this delay was abitrary, capricious and without probable cause, and thus penalties and attorneys' fees should have been levied.
A refusal to pay worker's compensation benefits depends primarily on facts known to the employer at the time of its action; the determination of whether it is arbitrary, capricious, or without probable cause is a question of fact. Thus, the trial judge's refusal to award penalties and attorneys' fees will not be reversed unless it is manifestly erroneous. Lewis v. Alloy Casting of La., Inc., 465 So.2d 847 (La. App.2d Cir.1985); Lamette v. Morrison Assurance Co., 461 So.2d 351 (La.App.2d Cir. 1984); Edwards v. Hartford Ins. Co., 445 So.2d 499 (La.App.2d Cir.1984); Singleton v. Bushnell & Co., 437 So.2d 347 (La. App.2d Cir.1983). There is no manifest error in the trial judge's refusal to award penalties and attorneys' fees here, as the record clearly evidences the existence of a bona-fide dispute regarding the amount due. The testimony of Ms. Verrett, claims adjuster for defendant-insurer, and Dr. Von Noorden, plaintiff's treating physician, both reveal that Dr. Von Noorden made a mistake regarding the date of the accident in his letter about plaintiff's surgery to the insurance company. Therefore, as she testified, Mrs. Verrett was unable to verify that the surgery performed was related to the accident in question until the error was later clarified by a later letter of Dr. Von Noorden's. As her testimony also indicates, these benefits were paid as soon as the discrepancy was cleared up.
We agree with the trial judge that plaintiff was not entitled to penalties and attorney fees.

Decree
For the reasons set forth, the judgment of the trial court is amended by correcting the third paragraph thereof, pertaining to permanent partial disability, to read as follows:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT CONTINENTAL INSURANCE COMPANY AND THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE PAY UNTO LINDA WEBB KILLEN PERMANENT PARTIAL DISABILITY OF $245 PER WEEK FOR 60 WEEKS, WITH LEGAL INTEREST ON EACH INSTALLMENT *716 FROM DUE DATE UNTIL PAID, LESS A CREDIT FOR WEEKLY BENEFITS PAID."
and, as amended, the judgment is affirmed, at appellees' cost.

ON APPLICATION FOR REHEARING
Before JASPER E. JONES, FRED W. JONES, MARVIN, LINDSAY and HALL, JJ.
Rehearing denied.