ARMSTRONG, Judge.
Plaintiff, Ronnie Sweeney, appeals the trial court’s judgment finding that Sweeney was not disabled and therefore not entitled to Supplemental Earnings Benefits. We affirm the trial court’s judgment.
On October 20, 1986, Ronnie Sweeney was injured in the full course and scope of his employment with Transit Management of Southeast Louisiana, Inc. (“TMSEL”) when he tripped while descending a flight of stairs.
Immediately following the accident, Sweeney was treated at the emergency room at Touro Infirmary and was subsequently examined by Dr. Joseph Taminie, the company doctor.
Sweeney was next treated by Dr. John P. Howser, a neurosurgeon in Memphis, Tennessee. After several months of conservative treatment and unsuccessful attempts at nerve blocks and facets blocks, Dr. How-ser suggested surgery. On February 9, 1987, Dr. Howser performed L-5 disc surgery. On June 26, 1987 Dr. Howser released Sweeney with instructions to “try to return to work.” Dr. Howser assessed Sweeney with having a twenty-five (25%) percent permanent anatomical disability to the body as a whole.
At the time of his injury Sweeney earned $20.56 an hour. As a result of his injury Sweeney went out on temporary total disability and received weekly checks in the amount of $261.00 from October 20,1986 to June 29, 1987. Medical bills totalling twenty-one thousand six-hundred and sixty-three dollars and seventy cents ($21,663.70) have been paid by TMSEL.
Sweeney returned to work on June 29, 1987 at his pre-injury wage. On that day he was given a new job position of “General Foreman”. Sweeney requested and received a merit increase which raised his salary to $21.35. Two months later, he was given the title of “Maintenance Projects Coordinator” which is considered administrative staff. Both of these newer positions entailed drastically reduced supervisory duties.
On October 15, 1987, Sweeney advised his supervisor at TMSEL that he was going to Memphis for a visit with his treating physician. He saw his doctor on October 16, 1987, and the doctor again advised him to continue work and that pain was to be expected. Sweeney, however, did not return to work after his doctor’s visit. Nor did he advise TMSEL as to why he did not return.
On December 4, 1987, after repeated attempts to contact Sweeney, TMSEL wrote him a letter advising him that he had been terminated because he abandoned his employment.
Sweeney had, in fact, begun employment in Tennessee on October 19, 1987 at the rate of $8.65 an hour. On November 25, 1987, Sweeney was terminated from this position.
Sweeney made written demand against TMSEL for supplemental earnings benefits under the Worker’s Compensation Act on February 9, 1988. These benefits were denied. On November 18, 1988 a petition for benefits was filed in Civil District Court resulting in a bench trial on the merits on December 6, 1989.
DISCUSSION
Sweeney claims that his primary reason for leaving TMSEL was his inability to continue his job because of his physical condition. TMSEL argues that Sweeney did not leave his job because of his inability to perform due to pain but for reasons *164 unrelated to his work-related injury. This appears to be the dispositive issue of this appeal.
Worker’s compensation is essentially insurance against loss or diminution of earning capacity. Supplemental Earnings Benefits are only designed to compensate workers who suffer a loss of income due to work-related disabilities.
Testimony revealed that Sweeney had secured a job closer to home at the time he left his employment. The trial court found that Sweeney was in mortal fear of being fired. He testified that he felt he was being “shoved” around at TMSEL. Sweeney also testified that his family was living in Tennessee due to the drug problems in New Orleans area schools and the fact that his parents are aged and living in Tennessee. The fact that Sweeney admitted that these factors influenced his decision to leave TMSEL are strongly indicative of his state of mind.
By every indication, Sweeney could have remained in his position and continued to earn $21.35 an hour. His immediate supervisor, the only person with authority to fire Sweeney, testified that he had no intention of terminating him. To the contrary, his services were much needed and TMSEL was disappointed that he failed to return to his job despite their requests that he do so. Leon Rung, TMSEL’s Director of Maintenance, testified that the job of Maintenance Projects Coordinator had been created for Sweeney and upon his leaving TMSEL it was dissolved.
In the alternative, TMSEL argues that since Sweeney is able to earn wages equal to ninety percent or more of his wages at the time of injury, it was not manifest error on the part of the trial court to find that he was not entitled to supplemental earnings benefits. Curlee v. General Motors Corp., Fisher Guide Div., 535 So.2d 1049 (La.App. 2d Cir.1988).
Under La.R.S. 23:1221(3)(a) a plaintiff is required to prove by a preponderance of the evidence that a work related injury resulted in his inability to earn wages equal to ninety percent or more of wages at the time of injury. Valley v. American Insurance Company, 510 So.2d 449 (La.App. 3d Cir.1987), writ denied, 514 So.2d 130 (La.1987). Testimony at trial establishes that when Sweeney was released by his doctor to return to work, he returned at his pre-in-jury wage. He worked at his pre-injury wage for three months. He then received a raise and worked at that rate for an additional month. His supervisor, Leon Rung, expressed nothing but satisfaction with his job performance. It was TMSEL’S position that Sweeney was terminated solely because he abandoned his position.
Nor is Sweeney entitled to permanent partial disability. The twenty-five percent disability that Sweeney was evaluated with is a combination of a fifteen percent disability rating from surgery for a prior work-related injury and the ten percent rating which he received for his injury while working for TMSEL. This percentage does not reach the threshold amount required to be assessed as permanently partially disabled. La.R.S. 23:1221(4)(q) states that no benefits shall be awarded or payable in this paragraph unless anatomical loss of use or amputation, as provided in subparagraphs (a) through (o) of this paragraph or loss of physical function as provided in subparagraph (p) of this paragraph is greater than 25% as established in the American Medical Association “Guides to the Evaluation of Permanent Impairment” copyright 1984, by the American Medical Association.
Finally, TMSEL argues that Sweeney did not prove by clear and convincing evidence that he was incapable of performing his job at TMSEL.
The Functional Capacities Assessment performed on Sweeney revealed that he was able to sit for forty minutes, continuously climb stairs for four minutes and climb a step ladder using reciprocal leg motion. While Mr. Sweeney had decreased sitting tolerance there was no prohibition against his standing up or walking around at anytime. Additionally, the trial court noted that Sweeney’s doctor, Dr. Howser, recommended that Sweeney continue working. His only concern being that Sweeney *165 had to descend stairs into the maintenance pit. However, the trial court observed that Dr. Howser was obviously uninformed that the stairs Sweeney had to descend were two or three flat and wide steps similar to those Sweeney had maneuvered when leaving the witness stand.
The evidence appears to be more than sufficient to support the trial court’s judgment.
The issue of disability is determined by the totality of the evidence, including both lay and medical testimony. On appellate review, the trial court’s findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact, which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s findings, unless clearly wrong. The reviewing court should not disturb reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable.
Breaux v. National Union Fire Insurance Company, 527 So.2d 1207 (La.App. 3d Cir.1988).
In conclusion, we agree with the trial court’s judgment. Sweeney is not entitled to Supplemental Earnings Benefits because he suffered no diminution of wages. Furthermore, Sweeney failed to prove that he left his employment with TMSEL due to his injury or injury-related condition.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED