671 So.2d 408 (1995)
Robert B. HURST
v.
BAKER SAND CONTROL.
No. 94 CA 2463.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
*409 Magdalen B. Bickford, Metairie, for Plaintiff/Appellant Robert B. Hurst.
William H. Eckert, Metairie, for Defendant/Appellee, Baker Sand Control.
*410 Before CARTER, PITCHER and CRAIN[1], JJ.
CARTER, Judge.
This is an appeal from a judgment of the Office of Worker's Compensation, denying plaintiff's claim for supplemental earnings benefits.

BACKGROUND AND PROCEDURAL HISTORY
On January 15, 1992, plaintiff, Robert B. Hurst, district manager for the Houma office of Baker Sand Control (BSC), suffered a work-related accident, injuring his back. At the time of the accident, plaintiff was earning an annual salary of $68,500.00. Plaintiff was treated by Dr. Donald J. Judice, neurosurgeon, for an L5-S1 herniated disc and ultimately underwent back surgery on March 10, 1992. On April 8, 1992, Dr. Judice released plaintiff to return to work in his supervisory position with the following physical limitations: no lifting more than seventy pounds; no carrying more than fifty pounds; no sitting, standing, or walking for prolonged periods without taking a break; no working on heavy, vibrating machines; no climbing on a ladder; and no repetitive bending, stooping, or crawling. Plaintiff returned to work as district manager and continued working until November 8, 1992, at which time he was asked to resign from employment with BSC.
On January 19, 1993, plaintiff filed a Disputed Claim for Compensation with the Office of Worker's Compensation, indicating a bona-fide dispute as follows:
Since my injury, I've been asked to resign my job with Baker Sand Control or befired [sic] for missing too much work, being late or absent. In [sic] looking for a new job with the same work environment with no heavy lifting. Jobs are few and not hiring. I have no income coming in and cannot do heavy labor because of my back injury. Baker Sand Control has failed to pay me worker's compensation and medical benefits. I therefore request that [I] be awarded compensation benefits, medical expenses, penalties, costs and attorney's fees for their arbitrary and capricious denial of benefits.
On April 4, 1993, plaintiff was hired by Evans Cooperage Company, Inc. (Evans) as fill plant manager, earning an annual salary of $45,000.00.
On February 28, 1994, the matter went to trial. The parties entered into the following stipulations:
1. Plaintiff sustained an accident during the course and scope of his employment.
2. All medical records, medical reports, and medical testimony will coincide with the testimony of Dr. Judice.
3. All medical expenses have been paid, and compensation benefits were paid to plaintiff until he was released by Dr. Judice to return to work. There is no arbitrary and capricious claim with respect to these expenses and compensation benefits.
4. Plaintiff's employment with BSC was terminated on November 8, 1992, at which time his annual salary was $68,500.00, plus a possible 20% incentive bonus.
5. On April 4, 1993, plaintiff began working for Evans Cooperage Company, Inc. as a fill plant manager, earning $45,000.00 annually.
On July 28, 1994, the hearing officer rendered judgment in favor of BSC, dismissing, with prejudice, plaintiff's claim for compensation. In his reasons for judgment, the hearing officer stated, in pertinent part, as follows:
The hearing officer interprets that paragraph [LSA-R.S. 23:1221(3)(a)] to mean that the work-related injury has to be the cause of the injured employee's inability to earn as much as he could before. In other words, he is now damaged goods, and his ability to command top dollar in the work force has been diminished, solely because he has been previously hurt.
* * * * * *
The hearing officer contends that claimant is not entitled to SEBs under the facts *411 and circumstances presented in this matter. Here, not only was the claimant physically capable of performing his pre-accident supervisory position, but he, in fact, returned to the same position earning the same salary and performing the same supervisory functions. Hurst continued in this same capacity for seven months when he was discharged for cause and for reasons reflective of poor business judgment and activitiesnot related to his accident, injury, physical condition, medical treatment, etc. Claimant then secured employment again in a supervisory capacity but simply earning less. He was unable to land numerous jobs he identified, jobs which paid wages comparable to those claimant earned at BSC.
* * * * * *
Furthermore, claimant's current earnings are in no way reflective of claimant's current earning capacity. Rather, claimant's $45,000.00 a year salary only indicates what wages claimant is earning. Claimant testified about numerous positions which he became aware of that paid wages comparable to, equal to, or greater than his wages at BSC. For each of these jobs that claimant identified and sought, he testified that he not only was qualified for the positions but that he also was physically capable of performing the work required of each position.
* * * * * *
The claimant is not entitled to SEBs because he is physically capable of performing his former employment duties at the same wages. In addition, numerous positions identified by claimant, and for which he sought, paid wages comparable to his BSC wages.
The hearing officer found, and the judgment noted, that plaintiff's average weekly wage was $1,308.26; that plaintiff was not entitled to supplemental earnings benefits; and that BSC was not arbitrary and capricious in failing to pay plaintiff supplemental earnings benefits. Plaintiff appealed from the adverse judgment, assigning the following specifications of error:[2]
1. The hearing officer erred in finding that plaintiff's correct average weekly wage did not include bonuses from BSC.
2. The hearing officer erred in finding that plaintiff was not entitled to supplemental earnings benefits.
3. The hearing officer erred in finding that there was alternative employment available to plaintiff at a comparable rate of pay following his termination from BSC.
4. The hearing officer erred in finding that BSC was not arbitrary and capricious in its refusal to pay plaintiff supplemental earnings benefits after his termination from BSC.

SUPPLEMENTAL EARNINGS BENEFITS
The purpose of supplemental earnings benefits (SEB) is to compensate the injured employee for wage earning capacity he has lost as a result of his accident. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). Like all other provisions of the worker's compensation law, the provisions governing SEB must be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Company, 545 So.2d 1005, 1006 (La.1989).
LSA-R.S. 23:1221(3) addresses SEB and provides, in pertinent part, as follows:
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation *412 for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10). (Emphasis added.)
Thus, the claimant in a SEB case must prove by a preponderance of the evidence that his work-related injury rendered him unable to earn 90% of his pre-injury wages. Fusilier v. Slick Construction Company, 94-11, p. 4 (La.App. 3rd Cir. 6/1/94), 640 So.2d 788, 791; Rachal v. Crown Store Equipment Co., 93-1602, p. 3 (La.App. 3rd Cir. 6/1/94), 640 So.2d 730, 732; Paul v. Gipson, 614 So.2d 1275, 1278 (La.App. 2nd Cir.1993); Moore v. Mason & Dixon Tank Lines, 540 So.2d 525, 528 (La.App. 1st Cir.), writ denied, 541 So.2d 1390 (La.1989). It is irrelevant whether the claimant is physically able to perform his former sedentary job that is no longer available. The relevant question is whether the claimant is partially disabled and whether he is unable to earn 90% of the wages he was earning prior to the injury. Allen v. City of Shreveport, 618 So.2d 386, 388-89 (La.1993). A claimant is not entitled to SEB when his inability to earn wages equal to 90% of his pre-injury wages is due to circumstances other than his work-related injury. Trahan v. Pelican Homestead, 613 So.2d 785, 792 (La. App. 4th Cir.), writ denied, 616 So.2d 683 (La.1993); Sweeney v. RTA Transit Management of Southeast Louisiana, 567 So.2d 162, 164 (La.App. 4th Cir.), writ denied 569 So.2d 988 (La.1990); Killen v. Continental Insurance Company, 514 So.2d 711, 714 (La.App. 2nd Cir.1987).
Once the claimant establishes a prima facie case for his entitlement to SEB, the burden shifts to the employer to show that the claimant is physically capable of work and that the work was offered or available to the claimant in his or the employer's community or reasonable geographic area. Daigle v. Sherwin-Williams Company, 545 So.2d at 1008-09; Skipper v. Acadian Oaks Nursing Home, 93-1502, p. 5 (La.App. 3rd Cir. 6/1/94), 640 So.2d 674, 677; writ denied, 94-1795 (La. 10/14/94), 643 So.2d 163. If the employer meets this burden, then the employee must show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial pain. LSA-R.S. 23:1221(3)(c)(ii); Paul v. Gipson, 614 So.2d at 1278.
Whether a claimant's injury prevents him from obtaining employment earning 90% of his pre-injury wages is a question of fact. Glascock v. Georgia-Pacific Corporation, 25,677, p. 8 (La.App. 2nd Cir. 3/30/94), 635 So.2d 474, 479; Morris v. Norco Construction Company, 632 So.2d 332, 335 (La.App. 1st Cir.1993), writ denied 94-0591 (La. 4/22/94), 637 So.2d 163; Smith v. Louisiana Department of Corrections, 618 So.2d 1065, 1068-69 (La.App. 1st Cir.1993), reversed on other grounds, 93-1305 (La. 2/28/94), 633 So.2d 129. Thus, the appellate court may not set aside the hearing officer's findings in this regard absent manifest error or unless the findings are clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d at 883.
In the instant case, Dr. Donald J. Judice, neurosurgeon, testified, by deposition, that he first examined plaintiff on February 4, 1992. Dr. Judice diagnosed a herniated disc at L5-S1, which he associated with plaintiff's work-related accident. On March 10, 1992, Dr. Judice performed surgery on the herniated disc. On April 8, 1992, Dr. Judice released plaintiff to return to work in his supervisory capacity, placing the following physical limitations on plaintiff: no lifting more than seventy pounds; no carrying more than fifty pounds; no sitting, standing, or walking for prolonged periods without taking a break; no working on heavy, vibrating machines; no climbing on a ladder; and no repetitive bending, stooping, or crawling. Plaintiff told Dr. Judice that his job was supervisory, requiring no manual labor. Dr. Judice opined that, from a functional standpoint *413 with respect to a supervisory position, plaintiff has no limitations.
Plaintiff testified that he began working for BSC after graduating from high school. He worked his way up through the company to become district manager of the Houma office. Plaintiff stated that his duties included working with forecasts, sales people, inventory control, and company expenses, as well as supervising approximately eighteen employees in the Houma district. Although his position was primarily supervisory in nature, plaintiff claims that he was occasionally required to help assemble and disassemble equipment and move pipe.
Plaintiff testified that, approximately four weeks after the accident, he returned to work with certain physical limitations, which had been placed on him by Dr. Judice. According to plaintiff, the physical limitations affected his job because he was only able to do office work and was unable to supervise equipment assembly and disassembly. However, plaintiff stated that, despite the limitations, he continued to perform his job duties at BSC.
On November 8, 1992, plaintiff ceased working for BSC, following a request from his supervisors that he resign. Plaintiff explained that the reason for the requested resignation was that he was not capable of performing his job duties, was frequently absent from work, and was not able to perform "hands-on" management as before. According to plaintiff, he frequently missed work to attend doctor's appointments and physical therapy appointments.
Plaintiff testified that, after leaving BSC, he began a job search, but was limited by his physical restrictions. Plaintiff indicated that there were jobs which he could not get because of his physical limitations. For example, he stated that Top Tools Company in Houma had a field position available, but that he could not accept the job because of his physical limitations. Plaintiff indicated that the salary for the position would have been comparable to that which he had previously earned at BSC. Top Tools Company had no available sales or managerial position.
Plaintiff testified that, on April 4, 1993, he began working for Evans as manager of their filling operations. His duties included scheduling employees, trucks, tank cars and tank trucks, assigning personnel to filling operations, and scheduling and organizing shipments. Plaintiff indicated that he is able to perform the job, but his physical limitations cause him to be less "hands-on" than he should be. Plaintiff's annual salary at Evans is $45,000.00, with no expected raises or bonuses.
On cross-examination, plaintiff acknowledged that his job at BSC was supervisory and did not "require" him to help assemble or disassemble equipment. But plaintiff explained that "every manager in the company has to put his hands on equipment sometime." Plaintiff testified that he feels he is physically capable of performing his former job duties at BSC. In fact, plaintiff acknowledged that, after the accident, he returned to BSC, doing the same job which he had done before the accident and earning the same salary.
Plaintiff stated that his job at Evans requires no physical labor. Plaintiff indicated that, prior to being hired by Evans, he applied for other positions available to the public, with annual salaries ranging from $50,000.00 to $70,000.00, for which he felt qualified and capable of performing within his physical limitations. Plaintiff acknowledged that, with regard to approximately 80-90% of these jobs, either the positions were not offered to him or the positions never came into existence.
Jack G. Moore, vice president of the western hemisphere operations for BSC in 1992, testified that he was ultimately responsible for the operations of the Houma office. Moore indicated that he was involved in the decision to replace plaintiff at BSC. Moore explained that one of the reasons for the decision was that there was a morale problem in the Houma district under plaintiff's leadership. According to Moore, employees in the Houma district were not being motivated by plaintiff, and there was a lack of support from plaintiff. Moore stated that plaintiff had left the employees to make important decisions and to run the Houma office without his direct involvement and leadership. Moore explained that there was also a lack of confidence in plaintiff by his direct *414 supervisors, as well as the marketing group, who act as intermediaries between the district operations and the customers. According to Moore, plaintiff's lack of judgment compromised the marketing group's business with certain customers.
Moore testified that, as early as April of 1992, he had discussions with plaintiff regarding his job performance and his position at BSC. During these discussions, Moore mentioned the morale problem as well as the lack of confidence in plaintiff. Moore testified that plaintiff's accident, medical treatment, and physical limitations had absolutely nothing to do with the decision to replace plaintiff. Moore indicated that BSC provided plaintiff with severance pay and assistance from an out-placement training program, which assisted plaintiff in getting back into the job market.
Walter M. Barrios, Human Resource and Insurance Director for Evans, testified via deposition. Barrios was unaware of any problems plaintiff had in performing his job duties at Evans due to his physical limitations. According to Barrios, plaintiff supervised approximately thirty employees, and any problems plaintiff might be having would have been made known to Barrios.
The hearing officer, after evaluating the medical and lay testimony, concluded that plaintiff failed to prove by a preponderance of the evidence that his work-related injury resulted in his inability to earn 90% of his pre-injury wages. After reviewing the record in its entirety, we find that a reasonable basis exists for this finding. The record reveals that, four weeks after the accident, plaintiff returned to work at BSC, performing the same job duties and earning 100% of his pre-injury wages. The record also reveals that, after plaintiff left BSC, there were many positions available to plaintiff, for which plaintiff felt qualified and capable of performing within his physical limitations, with salaries greater than 90% of plaintiff's pre-injury wages. However, the positions either were not offered to plaintiff or never came into existence. There is no indication that plaintiff failed to secure any of these positions because of his physical limitations. The record amply supports the hearing officer's finding that plaintiff failed to prove by a preponderance of the evidence that his work-related injury resulted in his inability to earn 90% of his pre-injury wages. See Barousse v. Lakeside Laboratory, Inc., 95-0060 (La.App. 1st Cir. 10/6/95); 662 So.2d 881. Thus, this finding is not manifestly erroneous.[3]

PENALTIES AND ATTORNEY'S FEES
Plaintiff contends that the hearing officer erred in failing to award him penalties and attorney's fees against BSC for their arbitrary and capricious refusal to pay him SEB.
A refusal to pay worker's compensation benefits depends primarily on facts known to the employer at the time of its action. The determination of whether it is arbitrary, capricious, or without probable cause is a question of fact. Thus, the hearing officer's refusal to award penalties and attorney's fees will not be reversed unless it is manifestly erroneous. Killen v. Continental Insurance Company, 514 So.2d at 715.
After reviewing the record in its entirety, we find no manifest error in the hearing officer's refusal to award penalties and attorney's fees in this case. The record clearly evidences the existence of a bona-fide dispute regarding whether plaintiff was entitled to SEB.

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer is affirmed. Appeal costs are assessed against plaintiff.
AFFIRMED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] Although this opinion does not address each assignment of error individually, the opinion adequately disposes of all issues raised.
[3] In his first assignment of error, plaintiff contends the hearing officer miscalculated plaintiff's average weekly wage, omitting the 20% incentive bonus. However, the parties stipulated that all compensation benefits to plaintiff between the date of the accident and the date of his release to return to work have been satisfied and that BSC was not arbitrary and capricious in the amount of these payments. Therefore, the average weekly wage becomes relevant only if plaintiff is entitled to SEB. Given our conclusion that the hearing officer did not err in denying plaintiff SEB, it is unnecessary to discuss the issue of plaintiff's average weekly wage.