# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-1014

**MARION THOMAS TERRAL, JR.**

**VERSUS**

**JUSTISS OIL COMPANY, INC. AND**
**EMPLOYERS GENERAL INSURANCE COMPANY**

\*\*\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM THE**
**OFFICE OF WORKERS' COMPENSATION, DISTRICT 1-E**
**PARISH OF LASALLE, NO. 03-05337**
**BRENZA R. IRVING, WORKERS' COMPENSATION JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

**JAMES T. GENOVESE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Billy H. Ezell, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

**George A. Flournoy**
**Flournoy & Doggett, APLC**
**Post Office Box 1270**
**Alexandria, Louisiana 71309**
**(318) 487-9858**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Marion Thomas Terral, Jr.**

**Donald R. Wilson**
**Gaharan & Wilson**
**Post Office Box 1346**
**Jena, Louisiana 71342**
**(318) 992-2104**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Justiss Oil Company, Inc. and**
**Employers General Insurance Company**

**GENOVESE, JUDGE.**

In this workers' compensation case, the employee is appealing a judgment denying his claim for supplemental earnings benefits, medical benefits, and penalties and attorney fees. For the following reasons, we affirm.

## FACTS

Claimant, Marion Thomas Terral, Jr., was employed by Defendant, Justiss Oil Company, Inc. (Justiss Oil)[1], for several years as a gang pusher or "rig runner." On September 3, 1999, Mr. Terral sustained a work-related injury to his lower back. Mr. Terral received workers' compensation indemnity benefits based upon an average weekly wage of $699.54 through December 28, 2002.

Medical benefits were also provided to Mr. Terral for his treatment as a result of his work-related injury. He first saw a general practitioner, Dr. Joseph Mark Tarpley, who referred him to Dr. Troy M. Vaughn, a neurosurgeon. Dr. Vaughn opined that Mr. Terral sustained a soft tissue injury to his back. An MRI revealed that he had degenerative changes at L2-3 and bulging of the disc at L1-2 and L2-3. Dr. Vaughn was of the opinion that Mr. Terral was not a surgical candidate and felt that Mr. Terral had reached maximum medical improvement (MMI) as of December 29, 1999. Dr. Vaughn also referred Mr. Terral to Dr. Stephen Katz, a pain management specialist.

When Mr. Terral obtained MMI status, Justiss Oil initiated vocational rehabilitation services. In connection with his vocational rehabilitation, Mr. Terral attended Louisiana Technical College–Shelby M. Jackson Campus (Louisiana Technical College) where he completed his studies in December of 2002. He

---

[1] Employers General Insurance Group, the workers' compensation liability insurer of Justiss Oil Company, Inc., is also named as a defendant herein. Unless otherwise noted, Justiss Oil and Employers General Insurance Group are collectively referred to herein as "Justiss Oil."

1

obtained an Associate of Applied Technology diploma as an "associate computer technician" on January 22, 2003. Justiss Oil discontinued Mr. Terral's indemnity benefits for temporary total disability (TTD), effective December 28, 2002, following Mr. Terral's successful completion of the course. Vocational rehabilitation was also discontinued in February of 2003 when Mr. Terral secured full-time employment with the LaSalle Parish Sheriff's Department. Mr. Terral first worked as a jailer, and subsequently, as a deputy. Mr. Terral continued his employment with the LaSalle Parish Sheriff's Department through the date of trial.

In September of 2004, Mr. Terral experienced an exacerbation of his back pain when getting out of bed. Consequently, on September 9, 2004, Mr. Terral returned to see Dr. Katz who ordered an MRI. Justiss Oil denied authorization for the MRI. On October 13, 2004, Mr. Terral saw Dr. Vaughn who also requested authorization for an MRI. This request for an MRI was likewise denied. Thereafter, Mr. Terral continued to treat with Dr. Katz for pain management.

In April of 2006, Mr. Terral saw Dr. Clark Gunderson, an orthopedic surgeon. Like Dr. Katz and Dr. Vaughn, Dr. Gunderson requested an MRI. This MRI, which was approved by Justiss Oil, revealed disc herniations at L4-5 and L5-S1. Dr. Gunderson requested authorization for surgery.

In light of Dr. Gunderson's surgical recommendation, Justiss Oil sought a second medical opinion. On November 13, 2006, Mr. Terral was seen by Dr. Donald Smith, a neurosurgeon. However, at that time, Dr. Smith was unable to make any "recommendation with regards to surgery or other aspects of therapy" due to the fact that he was not presented with the radiographic studies of Mr. Terral's lumbar spine. After being provided with the necessary studies, Dr. Smith was deposed and rendered an opinion that the condition of Mr. Terral's spine at L4-5 and L5-S1, for which the

2

surgery had been recommended, was not causally related to his original 1999 work-related accident.

Based on Dr. Smith's opinion, Justiss Oil declined to authorize the surgery which Dr. Gunderson had recommended, and it requested an independent medical examination (IME). On February 2, 2007, the workers' compensation judge (WCJ) denied Justiss Oil's request for an IME, noting that "[t]he neurosurgeons do not differ in their opinions in regard to the issue of causation."

Mr. Terral filed a disputed claim for workers' compensation benefits (1008) on July 25, 2003. The matter proceeded to trial on the issues of Mr. Terral's entitlement to SEB, surgery, additional vocational rehabilitation, and penalties and attorney fees. The WCJ ruled that Mr. Terral had failed in his burden of proving a causal connection between his 1999 compensable work-related accident and the finding of disc herniations in 2006; therefore, his claim for authorization of the surgery was denied. The WCJ also found that Mr. Terral was voluntarily underemployed and, thus, not eligible for supplemental earning benefits (SEB). Finally, the WCJ denied Mr. Terral's claim for penalties and attorney fees. A judgment in accordance therewith was signed by the court on June 4, 2007. It is from this judgment that Mr. Terral appeals.

## ISSUES

The issues raised on appeal are whether the WCJ erred: (1) in denying Mr. Terral's claim for SEB; (2) in refusing to order the surgery recommended by Dr. Gunderson; (3) in failing to award penalties and attorney fees; (4) in denying Mr. Terral's claim for medical travel reimbursement; and (5) in admitting the deposition testimony of Dr. Smith with regard to causation.

## LAW AND DISCUSSION

### *Standard of Review*

> In workers' compensation cases, the factual findings of the trial court are subject to the manifest error standard of review. *Smith v. Louisiana Dep't of Corrections*, 93-1305, p. 4 (La. 2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530, pp. 4-5 (La. 1/14/94), 630 So.2d 733, 737-38. In applying the standard, the appellate court must determine not whether the trier of fact's conclusion was right or wrong, but that it was reasonable. *Freeman*, 630 So.2d at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous. *Stobart*, 617 So.2d at 882. Therefore, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

*Lebert v. McNeese State Univ.*, 05-856, p. 4 (La.App. 3 Cir. 2/1/06), 932 So.2d 678, 683 (alteration in original).

### *Entitlement to SEB*

On appeal, Mr. Terral asserts that he "carried his burden of proving disability and resultant inability to earn at least [ninety percent] of his pre-injury wages." He concludes, therefore, that in order to defeat his SEB claim, Justiss Oil was required to "prove that the employee is physically able to perform a certain job and that the job was offered or available to the employee in his community or reasonable geographic region" in accordance with *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005 (La.1989), and *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. We disagree.

In order to be entitled to receive SEB, a claimant must prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. La.R.S. 23:1221(3)(a). In the

4

instant matter, the WCJ found that Mr. Terral was "self-limiting his ability to earn at least ninety percent of his pre-injury wage." Implicit in this finding is a determination that Mr. Terral failed to prove that he is "unable" to earn ninety percent or more of his pre-accident wages. Mr. Terral, therefore, failed to meet his burden of proof under La.R.S. 23:1221(3)(a). It is only when the initial burden of proof is met by Mr. Terral that the burden would shift to Justiss Oil.

The WCJ noted that Mr. Terral "is able to perform the level of activity required for [the job of deputy sheriff] and has not chose [sic] to seek employment that may yield a higher salary." The testimony of Mr. Terral establishes that he was content working as a deputy sheriff and relished his job. His employment as a deputy sheriff was tantamount to a voluntary reduction in his income. Mr. Terral's decision to remain in this position was his preference, and he has not established that he was "unable" to earn ninety percent or more of his pre-accident wages. "[A]ny worker able to earn, but not earning, [ninety percent] or more of the former wage is not entitled to [SEB]." *Killen v. Cont'l Ins. Co.*, 514 So.2d 711, 714 (La. App. 2 Cir. 1987) (citing *Malone-Johnson, Louisiana Civil Law Treatise*, Vol. 13, § 275, p. 96.) For the foregoing reasons, we find no manifest error in the WCJ's factual finding on this issue.

### *Surgical Recommendation*

Mr. Terral contends that the WCJ erred in refusing to order the surgery that had been recommended by Dr. Gunderson. We disagree. On the issue of the surgical recommendation, it was Mr. Terral who bore the burden of establishing a causal connection between the need for the surgery and the work-related accident of 1999. *Cotton v. First Fleet*, 07-41 (La.App. 3 Cir. 5/2/07), 957 So.2d 239, *writs denied*, 07-

5

1486, 07-1544 (La. 10/5/07), 964 So.2d 947, 948 (citing *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So.2d 320 (La.1985)); *Bollich v. Family Dollar, Inc.*, 05-1459 (La.App. 3 Cir. 6/21/06), 934 So.2d 249.

The WCJ summarized the evidence relative to the causal connection between Mr. Terral's present back condition, for which Dr. Gunderson recommended surgery, and his work-related injury of 1999, as follows:

> Claimant was diagnosed, following the 1999 accident, with congenital narrowing of the spinal canal and early degenerative changes at L2-3, along with mild annular bulging of the disc L1-2. In March, 2000, he had reached maximum medical improvement. In February, 2003, he began working in a full time position as a deputy sheriff. In 2004, intervening occurrences caused him to seek medical treatment. In 2006 an MRI revealed ruptured discs. The facts as illustrated hereinabove do not show a correlation between the disc rupture findings in 2006 and the degenerative changes of 1999. Medical evidence suggest[s] it was claimant's degenerative condition that predisposed him to the 2004 injury and not the 1999 accident. The evidence leaves the probabilities evenly balanced and shows only a possibility of a causative connection between the initial injury and the ruptured disc. It is equally possible that the ruptured disc found in 2006 occurred as a result of a 1999 accident as it is that it occurred from intervening events of 2004 as described herein. A finding of a causative connection is contrary to medical evidence and could only be based upon speculation or conjecture.

We find this factual finding of the WCJ to be wholly supported by the record. Dr. Vaughn's diagnosis of Mr. Terral following his 1999 accident was a soft tissue injury to his back with degenerative changes at L2-3 and a bulging of the disc at L1-2 and L2-3. He did not feel that surgery was warranted at that time. As of 1999, Dr. Vaughn was of the opinion that Mr. Terral was at MMI. While we recognize that Mr. Terral did undergo pain management treatment, it was not until 2006 that Dr. Gunderson ordered an MRI which revealed ruptured discs at L4-5 and L5-S1. The inability of Mr. Terral to causally connect the ruptured discs diagnosed in 2006 to the 1999 work-related accident was clearly explained by Dr. Smith. Dr. Smith pointed

6

out that there were no injuries noted to the L4-5 and L5-S1 areas of Mr. Terral's spine as a result of his 1999 workers' compensation accident.

No credence can be given to Mr. Terral assertions that "there had been no intervening accidental, traumatic injuries in the interim." Mr. Terral himself testified that in October of 2004, he experienced an exacerbation of his back pain while getting out of bed which, in his words, was "new." Mr. Terral's back pain was significant enough that he sought emergency room treatment for his back on three occasions in October of 2004. Notably, at that time, he was engaged in full-time employment with the sheriff's department. Additionally, Mr. Terral acknowledged that in 2003 he had been involved in a motor vehicle accident where he was hit "head-on." Although Mr. Terral's complaints following that accident were primarily of his neck and head, they were significant enough for him to have sought medical treatment.

We agree with the conclusion of the WCJ that a finding of causation "could only be based upon speculation or conjecture." "If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the plaintiff fails to carry the burden of proof." *Albert v. Trans Met Inc*., 38,261, p. 5 (La.App. 2 Cir. 6/23/04), 877 So.2d 183, 188 (citing *Emilien v. U.R. Constr.*, 02-278 (La.App. 4 Cir. 10/30/02), 832 So.2d 345; *Shelton v. Wall*, 614 So.2d 828 (La.App. 2 Cir. 1993); *Williams v. Louisiana Coca-Cola Co.*, 94-810 (La.App. 5 Cir. 3/1/95), 652 So.2d 108); *Bollich*, 934 So.2d 249. We find, therefore, that Mr. Terral failed to satisfy his burden of proving the requisite causal connection between his 1999 work-related accident and the diagnosed ruptured discs in 2006 and concomitant surgical recommendation of

7

Dr. Gunderson. Therefore, we find no manifest error in the WCJ refusing to order the surgery as recommended by Dr. Gunderson.

***Penalties Pursuant to La.R.S. 23:1201(F), (I), and (J)***

Mr. Terral contends that the WCJ erred in denying his claim for penalties and attorney fees. Specifically, he asserts in his brief that he is entitled to penalties pursuant to La.R.S. 23:1201(F) for the failure of Justiss Oil to authorize the MRI requested by Dr. Vaughn and Dr. Katz, and its failure to authorize the surgery recommended by Dr. Gunderson. Mr. Terral also appeals the WCJ's denial of his claim for penalties pursuant to La.R.S. 23:1201(I) for the termination of his TTD in December of 2002. Finally, he contends that he is entitled to an attorney fee award pursuant to La.R.S. 1201(J). We find no merit to these contentions.

Louisiana Revised Statutes 23:1201 provides, in pertinent part, as follows:

> F. Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:
>
> . . . .
>
> (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

8

. . . .

I. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:658(C) shall be applicable to claims arising under this Chapter.

J. Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section, and an award of such single attorney fee shall be res judicata as to any and all conduct for which penalties may be imposed under this Section which precedes the date of the hearing.

*Failure to Authorize MRI and Failure to Authorize Surgery*

Louisiana Revised Statutes 23:1203 requires an employer to provide all reasonable and necessary medical treatment to an employee who sustains a work related injury. Louisiana Revised Statutes 23:1201(F) provides for the imposition of a penalty when an employer fails to fulfill this obligation. However, the medical treatment must be causally related to the work-related injury, and it must be appropriate. *Fritz v. Home Furniture-Lafayette*, 95-1705 (La.App. 3 Cir. 7/24/96), 677 So.2d 1132.

Justiss Oil does not dispute that it based its denial of the requested MRI on the recommendation of an independent medical review agency. Notably, the request came approximately five years after the work-related injury. Additionally, since Mr. Terral had been discharged by Dr. Vaughn in 1999, he had not been seen by either an orthopedist or a neurosurgeon. Similarly, with respect to the surgical

9

recommendation, the WCJ concluded that Justiss Oil "had a reasonable basis to deny the recommended surgery due to the intervening occurrences of September, 2004, and the medical changes noted on MRIs taken in 1999 and 2006. That same basis justified defendant's denial of the request for the second MRI. "

For the reasons discussed above, we find that Justiss Oil reasonably controverted the request for the MRIs and the surgical request of Dr. Gunderson on the basis of lack of causation. Our review of the record, at the very least, presents two permissible views of the evidence thereby negating Mr. Terral's claim that the WCJ was manifestly erroneous or clearly wrong.

*Discontinuance of TTD*

Mr. Terral asserts that the discontinuance of TTD by Justiss Oil upon his completion of the computer course with Louisiana Technical College warrants the imposition of penalties. We find no merit to this contention.

The medical evidence clearly established that Dr. Vaughn was of the opinion that Mr. Terral had reached MMI by December of 1999. As of his report of March 29, 2000, Dr. Vaughn had "no further treatment recommendations." He also indicated that he agreed with the functional capacity evaluation that had been performed which indicated that Mr. Terral was able to perform light-duty work. "A worker who is able to perform light duty work is not entitled to [TTD] benefits." *Clark v. Town of Basile*, 01-1203, p. 8 (La.App. 3 Cir. 3/27/02), 812 So.2d 879, 884, *writ denied*, 02-1204 (La. 6/21/02), 819 So.2d 332 (citing *Holden v. Int'l Paper Co.*, 31,104 (La.App. 2 Cir. 10/28/98), 720 So.2d 442, *writ denied*, 98-2956 (La. 1/29/99), 736 So.2d 834). Accordingly, the failure of the WCJ to award Mr. Terral a penalty for the discontinuance of his TTD benefits was not manifestly erroneous.

<u>Attorney Fees</u>

Mr. Terral also appeals the WCJ's failure to award him attorney fees pursuant to La.R.S. 23:1201(J). For the reasons set forth above, we find that Justiss Oil was not arbitrary and capricious in its handling of Mr. Terral's claims. Having found that the employer reasonably controverted the claims asserted by Mr. Terral, the WCJ was not clearly wrong in denying his claim for attorney fees.

**Medical Travel Reimbursement**

From our review of the record, there is no indication that medical travel reimbursement was an issue before the trial court. We agree with Justiss Oil that "[t]here is no evidence in the record of any request for payment of mileage expense, nor is there any indication that [Mr. Terral] ever advised [Justiss Oil] that this expense, and the amount thereof, had ever been incurred." Consistent therewith is the testimony of Mr. Terral himself wherein he stated that he did not submit mileage expenses to Justiss Oil for reimbursement after December of 2002. Mr. Terral explained that when he received correspondence advising of the termination of benefits, "he assumed that everything was over and nothing more would be paid." We, therefore, find no manifest error in the WCJ's denial of Mr. Terral's claim for medical travel reimbursement.

**Deposition Testimony of Dr. Smith**

Mr. Terral asserts on appeal that the trial court erred in admitting the deposition testimony of Dr. Smith with regard to causation. We find no merit to this contention.

It is undisputed that the deposition of Dr. Smith was duly noticed. On the afternoon of the scheduled deposition, Plaintiff's counsel advised counsel for Justiss Oil that he would not participate in the deposition because he had not been provided

with a copy of Dr. Smith's written report.[2] Counsel for Mr. Terral did not move to quash the deposition. Instead, he chose not to participate. Accordingly, no objections were made during the taking of the deposition since counsel chose not to participate.

Counsel for Mr. Terral did not file a motion in limine, to exclude the deposition of Dr. Smith. When counsel for Justiss Oil attempted to introduce Dr. Smith's deposition at trial, counsel for Mr. Terral objected.[3] Although the assertion is made in brief that "[p]laintiff timely objected[,]" we disagree. In fact, there was no objection made by counsel for Mr. Terral to the testimony of Dr. Smith on the issue of causation during the deposition.

Mr. Terral contends that "[t]he purpose of the examination was specified - to see whether Dr. Smith agreed with the reasonableness of the surgery proposed by Dr. Gunderson." He argues that "[t]he request for the second medical opinion by Dr. Donald Smith did not mention causation as an issue nor as a reason for the second medical opinion examination."

Dr. Smith is a board certified neurosurgeon who examined Mr. Terral. It was certainly within the ambit of Dr. Smith's expertise to give an expert medical opinion on whether the surgery which had been recommended was related to the injuries which Mr. Terral had sustained. For the foregoing reasons, we find no error in the WCJ admitting the deposition testimony of Dr. Smith on the issue of causation.

---

[2]The record reflects that although Dr. Smith had prepared a written report, it had not been forwarded to counsel for Justiss Oil. Consequently, **neither** counsel had a copy of Dr. Smith's report prior to his deposition; thus, the fact that Mr. Terral's counsel did not have a copy of Dr. Smith's written report prior to his deposition was not attributable to the action or inaction of counsel for Justiss Oil.

[3]Three grounds were asserted as a basis for the objection. First, counsel asserted that the deposition was inadmissible since he had objected to it being taken without his being furnished Dr. Smith's written report prior thereto. Second, counsel asserted that the deposition was inadmissible because he had never been furnished with a copy of the deposition. Counsel's third objection was that which he raises on appeal relative to Dr. Smith's testimony on the issue of causation.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed in all respects. Costs of this appeal are assessed against Marion Thomas Terral, Jr.

**AFFIRMED.**